**LAM TAT SIN, Plaintiff,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service, Defendant.**

United States District Court
S. D. New York.
March 3, 1964.

Lebenkoff & Coven, New York City, for plaintiff; Jules E. Coven, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., S. D. New York, for defendant; Roy Babitt, Special Asst. U. S. Atty., of counsel.

DAWSON, District Judge.

This action is here on an order to show cause why an order of deportation against the plaintiff should not be stayed and on motion for summary judgment for the defendant.

The complaint in this action admits that plaintiff is an alien, subject to a valid order of deportation to Hong Kong, but asserts that the plaintiff is an intended beneficiary of a policy of the Immigration and Naturalization Service termed, by the complaint, a "moratorium upon the deportation of Chinese aliens to the Far East." The order to show cause directs a temporary stay of the order of deportation and directs defendant Esperdy, as District Director for the New York District of the Immigration and Naturalization Service, to show cause why the order of deportation should not

be stayed and why the plaintiff should not be permitted to remain free on bond pending the determination of these issues.

The statutory framework surrounding this action is provided by the Immigration and Nationality Act, Chapter 12 of Title 8 U.S.C. Section 241 of the Act states that "any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who * * * is in the United States in violation of this Act or in violation of any other law of the United States." The applicability of Section 241 has been admitted by the plaintiff.

Section 242(b) of the Act provides the procedure which should be used to determine the deportability of any alien. No objection to the procedure followed in this case has been raised. Section 242 (c) provides that the Attorney General shall effect the alien's departure from the United States within six months of a final order of deportation. However, the section goes on to say that

> "If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section. * * * "

Section 242(d) authorizes regulations governing the supervision of aliens who have remained in the United States beyond the six month period.

Section 243 deals with the country to which the alien shall be deported. Section 243(h) authorizes the Attorney General to withhold deportation to any country in which in his opinion the alien would be subject to physical persecution. No objection has been raised in this case as to the country to which the plaintiff is to be sent.

Section 244 provides that the Attorney General may in his discretion suspend deportation and adjust the status of certain aliens lawfully admitted for permanent residence. Plaintiff has not claimed relief under this section.

 This Court has jurisdiction [1] under Section 279 of the Immigration and Nationality Act, 8 U.S.C.A. § 1329, and Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Section 279 of the Immigration and Nationality Act states that:

> "The district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of [the Immigration and Nationality Act, subchapter II, 8 U.S.C. §§ 1151–1400]."

 Jurisdiction in this action is not affected by Section 106 of the Act (8 U.S.C. § 1105a). Section 106 provided for direct judicial review in the Court of Appeals of "all final orders of deportation." Plaintiff is not challenging the order of deportation in this case, but is seeking a stay of an admittedly valid order. See Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S. Ct. 306, 11 L.Ed.2d 281 (1963).[2]

---

1. The complaint alleges that this court has jurisdiction of the action "under the provisions of Title 8, U.S.Code, Section 2201 et seq.," but there is no such section. Presumably the intended provisions were 28 U.S.C.A. § 2201, the section authorizing declaratory judgments, and 28 U.S.C.A. § 2202, authorizing further necessary or proper relief based on a declaratory judgment or decree. These sections do not confer jurisdiction, however. They merely make a new remedy available in cases where jurisdiction already exists. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

2. The line drawn by the Foti case seems to be that only determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals are subject to review under Section 106. 375 U.S. at pp. 229–230, 84 S.Ct. 306, 11 L.Ed.2d 281.

Plaintiff does not challenge the order of deportation or the warrant of deportation. He is challenging the act of deportation itself which he claims is contrary to a policy of maintaining a "moratorium upon the deportation of Chinese aliens to the Far East."

Plaintiff has offered no proof as to the existence of the alleged moratorium. In oral argument plaintiff stated that he relies upon admissions of the defendant contained in the affidavit of Roy Babitt submitted in opposition to the order to show cause and in favor of the motion for summary judgment. Presumably plaintiff intends to rely upon the following language:

"9. Your deponent concedes a general political policy of the Attorney General of forbearance, at present, from enforcing expulsion of Chinese to Hong Kong. This policy, does not, however, preclude the Attorney General from considering whether or not specific classes of cases should remain under this stay or whether, all relevant facts being considered, they should be taken out of this general stay policy.

"10. In the instant case, upon consideration of all the relevant factors in the plaintiff's immigration status, the Attorney General has concluded that the general policy is not applicable to the plaintiff and to those in similar posture * * *."

Further explanation of this policy of forbearance can be found in defendant's brief. Apparently the forbearance is a result of the refugee problem in Hong Kong and some other free areas of Asia resulting from an influx of refugees from Red China. It appears from defendant's brief that early in 1962 President Kennedy

" * * * indicated a willingness to temporarily cease the flow of traffic to those countries of people in the United States. Apparently this was translated by the Executive Branch of the Government into a temporary deferral of deportation of people in the United States who would be des-

tined to the Far East, and in particular Hong Kong and Formosa. There does not seem to have been a regulation or a statute embodying this but rather a broad political policy determination. But this policy determination was of a general character and it did not purport to be anything more than a matter of temporary Executive grace which could be withdrawn at any time as to all or as to part of those aliens who, notwithstanding their clear deportability became the beneficiaries of the political problem in Hong Kong and Formosa." (Defendant's brief, p. 7)

The reason advanced by the defendant for not following the general policy of forbearance in this case is "a complete lack of good faith with the Government [on the part of the plaintiff] and indeed, affirmatively speaking, a clear showing of bad faith." (Defendant's brief, p. 9). This bad faith is established as follows:

"Reading between the lines it is crystal clear that plaintiff hopes to accomplish two things at one fell swoop: he has now gotten off the hook of electing the Mainland of China a place to which he never wished to go and now wishes to get off the hook of expulsion to Hong Kong by pointing to the fact that the Attorney General is not moving Chinese aliens to that place." (Defendant's brief, p. 12)

The facts in this action appear in the administrative file of the Immigration and Naturalization Service handed to the Court by the defendant on argument without objection from the plaintiff. The facts contained therein are briefly as follows:

1. Plaintiff entered the United States at Honolulu on January 20, 1962, as a crewman authorized to remain in the United States as long as the vessel on which he arrived remained in port, but not more than 29 days. Plaintiff remained in the United States for a longer time than permitted. On May 7, 1962, an order was issued by the Immigration and

Naturalization Service to plaintiff to show cause why he should not be deported.

2. On May 9, 1962, a hearing was held before a Special Inquiry Officer. At that hearing the plaintiff testified to the following effect: Plaintiff was born in the village of Foo Chow on the Chinese mainland. He served in the Chinese navy based at Taiwan between 1947 and 1949. In 1951 he moved to Hong Kong and became a sailor, leaving his family on the mainland. Since then he has seen his family only once, in 1957 and 1958, when he returned to the mainland for three months. In response to questioning by the Special Inquiry Officer, plaintiff chose the mainland of China as the country to which he would like to be sent if deported. Plaintiff's counsel admitted that plaintiff was deportable, and waived plaintiff's right to request withholding of deportation on the ground of possible physical persecution (8 U.S.C.A. § 1253 (h)).

The Special Inquiry Officer delivered an oral statement of his decision and ordered plaintiff deported to the mainland of China (pursuant to his choice) if the government on the mainland would accept him. Formosa, as the country of his nationality, was named as an alternative; Hong Kong, as the country of last residence, was named as a second alternative. At the hearing plaintiff's counsel orally waived his right to appeal the order. A Warrant of Deportation was issued on May 11, 1962.

3. Sometime between May 11th and May 16th, 1962, the Consul General of the Republic of China (on Formosa) issued a statement wherein he refused to consider plaintiff's admission to Taiwan.

4. On February 21, 1963, plaintiff reaffirmed his choice of the mainland of China to an Immigrant Inspector.

5. On May 6, 1963, the Representative of the People's Republic of China at the Sino-United States Ambassadorial Talks agreed to the return of plaintiff and two other aliens.

6. On November 1, 1963, plaintiff moved to reopen his proceedings on the ground that he would be subject to physical persecution if returned to the mainland. The Special Inquiry Officer denied the motion but resettled the order of May 9, 1962, to eliminate reference to the mainland of China, since that was no longer plaintiff's choice. The order was resettled on November 15, 1963. No appeal was taken.

7. A new Warrant of Deportation was issued on December 2, 1963. On December 17, 1963, a letter was sent to plaintiff informing him that he had been ordered deported to Hong Kong. On December 30, 1963, plaintiff was informed that he would be deported on January 15, 1964 at 9 A.M.

8. On January 14, 1964 the complaint in this action was filed and the order to show cause was signed.

■■■ The Attorney General must act reasonably in fixing any policy of forbearance and in fixing exceptions to that policy as well. This Court can set aside the actions of the Attorney General if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 1009 (Section 10(e) of the Administrative Procedure Act). In determining if there has been an abuse of discretion this Court cannot substitute its judgment for that of the Attorney General. If the reasons for refusing to stay deportation are sufficient on their face, there can be no further inquiry. United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489 (2d Cir. 1950).

■■■ The apparent reason for staying the execution of the bulk of the orders of deportation against Chinese to Hong Kong is to lessen the refugee pressure in that area. In furtherance of this goal the Attorney General need not stay all orders, but may distinguish between orders on any reasonable basis. The degree of good faith the alien exhibits in his dealings with the Government is one such reasonable basis.

Certainly it cannot be said that the reason advanced is on its face insufficient. "Nor has the [plaintiff] * * * any constitutional right to demand

that we should [inquire further]. As we have said, any 'legally protected interest' he ever had has been forfeited by 'due process of law;' forfeited as completely as a conviction of crime forfeits the liberty of the accused, be he citizen or alien. The power of the Attorney General to suspend deportation is a dispensing power, like a judge's power to suspend the execution of a sentence, or the President's to pardon a convict. * * * [N]ot every governmental action is subject to review by judges." United States ex rel. Kaloudis v. Shaughnessy, supra, 180 F. 2d pp. 490–491.

 Plaintiff has set forth no specific facts indicating an abuse of discretion as required by rule 56(e) of the Rules of Civil Procedure. The undisputed facts indicate that there is no fixed policy on the part of the Attorney General and that there has been no violation of any such policy. See, Lee Hip Chee v. Zimmerman, 75 F.Supp. 590 (E.D.Penn.1948). Defendant is therefore entitled to judgment as a matter of law.

A further ground for dismissal should also be mentioned. It does not appear that the plaintiff has exhausted his administrative remedies before commencing this action. Section 243.4 of 8 C.F.R. provides a procedure for application by an alien subject to a final order of deportation for a stay of deportation. Section 243.4 reads as follows:

"Any request by an alien under a final administrative order of deportation for a stay of deportation, except a request for withholding of deportation pursuant to section 243(h) of the Act, shall be filed on Form I–246 with the district director having jurisdiction over the place where the alien is at the time of filing. The district director, in his discretion, may grant a stay of deportation for such time and under such conditions as he may deem appropriate. Written notice of the disposition of the alien's request shall be served upon him, but neither the making of the request nor the failure to receive notice of the decision thereon shall relieve or excuse the alien from presenting himself for deportation at the time and place designated for his deportation. Denial by the district director of a request for a stay is not appealable but such denial shall not preclude the Board from granting a stay in connection with a motion to reopen or a motion to reconsider as provided in part 3 of this chapter." 26 Federal Register 12113 (Dec. 19, 1961).

There is no indication in the papers, including the administrative file of the Immigration and Naturalization Service on this plaintiff, that any such application has ever been made.

The defendant's motion for summary judgment is granted and the complaint is dismissed. So ordered.