**CHENG HO MUI and Pun Yi Pan, Plaintiffs,**

v.

**Dominick RINALDI, as District Director for the Immigration and Naturalization Service of New Jersey, Defendant.**

**Civ. A. No. 368–66.**

United States District Court
D. New Jersey.

Oct. 11, 1966.

---

Louis Ort, Newark, N. J., for plaintiffs; Lebenkoff & Coven, New York City, by Jules E. Coven, New York City, of counsel.

David M. Satz, Jr., U. S. Atty., by Kenneth Zauber, Asst. U. S. Atty., for defendant.

## OPINION

COOLAHAN, District Judge:

The plaintiffs Cheng Ho Mui and Pun Yi Pan are Chinese nationals and aliens who entered the United States as non-immigrant crewmen. They proceeded to overstay the length of time which they were permitted to remain in this country.[1]

Deportation proceedings were instituted against them under the Immigra-

---

[1]. This was for as long as the vessel on which they arrived remained in port, but in no event to exceed twenty-nine days.

tion and Nationality Act. Both plaintiffs were afforded deportation hearings pursuant to Section 242 of the Immigration and Nationality Act [hereinafter referred to as "the Act"], 8 U.S.C. § 1252. The plaintiffs were each found to be deportable, and in due course, after appeals not here pertinent were denied, deportation warrants issued which the defendant District Director is now prepared to execute.

The finding of deportability is not contested by either plaintiff. Rather, they seek review of the Director's order denying a stay of deportation. The plaintiffs had requested a stay pending the disposition of their applications for classification as refugees pursuant to Section 203 (a) (7) of the Act, 8 U.S.C. § 1153(a) (7).

The District Director took no action on these applications on the ground that the plaintiffs could not adjust their status here, and that consequently the applications could not be considered. On April 11 the Director denied the plaintiffs' requests for stays of their deportation.

Having exhausted their administrative remedies, plaintiffs brought this action. They seek a judgment that they may apply in this country for a classification as a refugee pursuant to Section 203(a) (7), and that they are entitled to stays of deportation pending the Government's determination of those applications. They allege that they are not seeking to have their status adjusted, as that term is used in the statute, but merely to obtain a preliminary classification as refugees prior to their departure.

The defendant Director has moved to dismiss the complaint on the grounds that this Court lacks subject matter jurisdiction, and in the alternative, for summary judgment dismissing the complaint as a matter of law.

## SUBJECT MATTER JURISDICTION

The defendant urges that exclusive jurisdiction over this matter is vested in the Third Circuit Court of Appeals by virtue of Section 106(a) of the Act, 8 U.S.C. § 1105a.[2] He contends that the requested stay merges with the final order of deportation which it seeks to restrain, and therefore, falls within the ambit of Section 106(a).

The exact scope of this provision has been the subject of considerable litigation. The Supreme Court has ruled that the decisive phrase "final orders of deportation" in this Section is not restricted to the adjudication of deportability alone, but also encompasses other determinations made during and incident to the administrative proceeding conducted by the Special Inquiry Officer which results in the final order of deportation. Foti v. I. N. S., 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964).

In *Foti*, the Court found that a refusal to suspend deportation was within the purview of Section 106(a) and reviewable only by the Court of Appeals; in *Giova*, a similar conclusion was reached with respect to a motion to reopen the deportation hearing.

Interpreting these Supreme Court decisions and extrapolating from them, the Federal Courts have differed on the applicability of Section 106(a) to denials of various types of discretionary relief.[3] In regard to the denial of a stay of deportation, two recent decisions in this District have held such denials to be within Section 106(a), and, therefore, beyond the jurisdiction of the District

---

2. Section 106(a) provides that the procedure for judicial review by the Courts of Appeals of final orders from certain designated federal agencies, shall also "apply to, and shall be the sole and exclusive procedure for, judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 242(b) of this Act * * *."

3. See e. g. Samala v. I. N. S., 336 F.2d 7 (5 Cir. 1964); Talavera v. Pederson, 334 F.2d 52 (6 Cir. 1964); Skiftos v. I. N. S., 332 F.2d 203 (7 Cir. 1964); Scalzo v. Hurney, 338 F.2d 339 (3 Cir. 1964); Mendez v. Major, 340 F.2d 128 (8 Cir. 1965).

Court. Wu Chun Hin v. Rinaldi, No. 402–66 (D.N.J.1966); Lam Ying Kwan, et al. v. Rinaldi, No. 483–66 (D.N.J. 1966). A similar decision was reached in Melone v. I. N. S., 355 F.2d 533 (7 Cir. 1966).

On the other hand, the District Court for the Southern District of New York has twice held that a denial of a stay was not within the ambit of § 106(a) and, twice taken jurisdiction of the complaint. Lam Tat Sin v. Esperdy, 227 F. Supp. 482 (S.D.N.Y.1964), aff'd. 334 F. 2d 999 (2 Cir. 1964), cert. denied 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 176 [the Second Circuit did not discuss jurisdiction]; Tai Mui v. Esperdy, 263 F. Supp. 901 (S.D.N.Y.1966).

Having considered all of these opinions, as well as the exceptionally fine brief filed on this point by the Government, I find that this Court does have subject matter jurisdiction.

A close reading of the *Foti* opinion indicates that the instant denial of a stay of deportation is not exclusively reviewable in the Court of Appeals under Section 106(a).

In the *Foti* case, the Second Circuit had held that even though a denial of suspension of deportation had been determined in the same § 242(b) proceeding which led to the deportation order, the denial was not within the scope of § 106(a). 308 F.2d 779 (1962).

On appeal from this decision, the Supreme Court repeatedly emphasized that "[T]he only question presented for decision involves the *scope of judicial review by the Courts of Appeals of administrative determinations made during the* *course of deportation proceedings."* 375 U.S. at 221; and see pg. 217, pg. 220, 84 S.Ct. at 309; and see pg. 308, pg. 309. [Emphasis added].

The Supreme Court reviewed the legislative history of Section 106(a) and the problem it was designed to remedy in some detail. The proliferation of possibilities for discretionary relief, available to a prospective deportee despite the finding of his deportability, had completely altered the nature of the deportation hearing.[4]

The opportunities for "piecemeal litigation" designed to forestall deportation were particularly burdensome in regard to the deportation proceeding conducted under Section 242(b) which resulted in the final order of deportation. Where the Special Inquiry Officer not only made a determination of deportability, but also ruled on several requests for discretionary relief prior to issuing the final order, separate appellate review of each decision could be used to frustrate the order with a continual delay.

The Supreme Court concluded that Congress had intended to end such bifurcation of judicial review of deportation proceedings, by eliminating the previous initial step—suit in a District Court—for all "final orders of deportation" arising from the Section 242(b) deportation proceeding. 375 U.S. at 225–230, 84 S. Ct. 306.

Moreover, the Court held that such "final orders" included any denial of discretionary relief made by the Special Inquiry Officer in the course of the hearing.[5]

The Court also quoted from the Committee report on § 106(a) concerning the

---

4. The determination of deportability, *vel non* is no longer the sole or even the main issue in such proceedings. In approximately 80% of the cases, deportability is conceded, making the Special Inquiry Officer's task essentially one of determining applications for discretionary relief. Gordon and Rosenfield, Immigration Law and Procedure, § 5.7a at 541 (1964).

5. "Also, it seems rather clear that all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals, such as orders denying voluntary departure pursuant to § 244(e) and orders denying the withholding of deportation under § 243(h), are likewise included within the ambit of the exclusive jurisdiction of the Courts of Appeals under § 106 (a)." 375 U.S. at 229, 84 S.Ct. at 314.

Congressional purpose " 'to create a single, separate, statutory form of judicial review of administrative orders for the deportation * * * of aliens * * *.' " 375 U.S. at 225, 84 S.Ct. at 312. However, the Government's reliance on this general statement is misplaced, because it was immediately qualified by a further delineation of the legislative intent, which limited the statute's effect to the deportation hearing.[6]

Finally, in a revealing footnote, the Court clearly indicated its understanding that, under § 106, the Courts of Appeals only had exclusive jurisdiction of matters determinable before the Special Inquiry Officer. The Court expressly adverted to the fact that the scope of the § 242(b) hearing was subject to continual fluctuation in accordance with changes in the administrative Regulations which govern its operation. Nonetheless, it emphasized that the reach of § 106(a) was still geared directly to the activities of the Special Inquiry Officer in that § 242(b) proceeding.[7]

Subsequent lower court decisions which have denied jurisdiction in the District Courts to review denials of a stay of deportation have apparently proceeded on a contrary view of *Foti*, namely: that the Supreme Court did not intend to limit the effect of § 106(a) to determinations arising only under Section 242(b) proceedings.[8]

In the matter at Bar, the Government urges a similar interpretation. Counsel maintains that since a stay of deportation would affect the execution of the final order of deportation, and since a denial of that stay would expedite the

---

**6.** "In further elucidating the purpose of the proposed legislation on the floor of the House, Representative Walter, * * * stated: :'Most important, by eliminating review in the district courts, the bill would obviate one of the primary causes of delay in the final determination of *all questions which may arise in a deportation proceeding.'* 104 Cong.Rec. 17173." 375 U.S. at 225, n. 11, 84 S.Ct. at 312. [Emphasis added].

It should be noted that Representative Walter was not only a respected authority on Immigration law, but also the author and chief sponsor of the statute in question. 375 U.S. at 223, n. 8, 84 S.Ct. at 306.

**7.** "When § 106(a) was enacted, the withholding of deportation under § 243(h) was a matter determined by an official other than a special inquiry officer conducting the deportation hearing, on a later occasion, under regulations promulgated by the Attorney General, and the designation of the country of deportation was not made until after the issuance of the warrant of deportation. Under revised and currently effective regulations, both the designation of the country of deportation and the decision on any § 243(h) request for relief * * * are effected in the deportation proceedings and reflected in the final order of deportation. *While presumably denials of § 243(h) relief were not covered by § 106(a) at the time of its enactment, it does not seem incongruous to assume that such orders,* *because of the change in administrative regulations making such decisions an integral part of the deportation proceedings conducted by a special inquiry officer, are now within the reach of § 106(a)'s judicial review provisions.*

Such a result simply means that, while the jurisdiction of the Courts of Appeals is limited now, as when § 106(a) was enacted, to the review of "all final orders of deportation," a change in the administrative regulations relating to the processing and determination of applications for § 243(h) relief had the incidental effect of expanding the decisional content of such orders." 375 U.S. at 230, n. 16, 84 S.Ct. at 314 [Emphasis added].

**8.** Wu Chun Hin v. Rinaldi, supra. Transcript of Hearing on Motion to Dismiss [Opinion from the Bench] 262 F.Supp. pg. 262.

The Court's oral opinion in *Wu Chun* stressed the fundamental Congressional policy underlying § 106(a), the mitigation of delay in the review of deportation orders, and concluded that *Foti* counseled a liberal reading of Section § 106(a) to that end. Ibid. Still, it is difficult to reconcile the analysis of the Supreme Court in footnote 16 of the *Foti* opinion, discussed immediately above, with the statement in *Wu Chun* that, regardless of its relationship to the matters determined in the § 242(b) proceeding, a denial of a stay of deportation was a "final order of deportation" within the intendment of § 106(a).

order, the denial should be deemed within the purview of § 106(a).[9]

■ For the reasons given above, I must disagree. The general desirability of avoiding undue delay of deportation is conceded. Grant also that a remedial statute is normally to be given a liberal construction. Nonetheless, there are limits inherent in every articulation of a statute's "underlying policy."

■ To be sure the judiciary should seek to effectuate such policies. It should interpret the statute's scope of operation with an eye toward the problems which Congress sought to remedy. But the Court must also recognize the precise extent to which the instant statute, as authoritatively delineated by the Supreme Court, pursues those purposes. Otherwise, it is easy to find oneself following the logical thrust of these policy considerations beyond the intended effect of the statute which Congress has actually enacted. Such is the case here.

While Congress clearly was concerned with reducing delay of piecemeal review in deportation matters, it does not necessarily follow that Section 106(a) was intended to eliminate every conceivable delay in the process of deportation which might judicially arise. If Congress did not intend to go that far, it is neither this Court's task nor its privilege to do so, no matter how much I might sympathize with the general objective of minimizing such delay.

With this consideration in mind, the dispositive point in *Foti*, is the aforementioned indication that § 106(a) was only enacted to speed appeals arising

from those determinations which fell within the scope of the original § 242(b) deportation hearing. Judge Dawson apparently arrived at the same conclusion in *Lam Tat Sin*, supra, where the denial of a stay was held outside § 106(a):

> "The line drawn by the *Foti* case seems to be that only determinations made during and incident to the administrative proceeding conducted by a special inquiry officer and reviewable together by the Board of Immigration Appeals are subject to review under Section 106. 375 U.S. at pp. 229–230 [84 S.Ct. 306, 11 L.Ed.2d 281]". 227 F. Supp. at 484, n. 2.

The Government also urges that the Supreme Court's later decision in Giova v. Rosenberg, supra, precludes limiting § 106(a) to determinations made at the original § 242(b) hearing.[10]

In *Giova*, the administrative decision being appealed was the denial of the motion to reopen the deportation hearing. The fact that this denial was made after the final order of deportation issued from the § 242(b) proceeding does present a superficial similarity to the denial *sub judice* of plaintiffs' requests for a stay. However, a motion to reopen inherently involves a reappraisal of the adequacy or validity of the determinations made at the § 242(b) proceeding; this is not necessarily the case in regard to a request for a stay. Hence the *Giova* decision is quite consistent with this Court's reading of the *Foti* case; it is a common sense application of the intent that § 106(a) expedite appeals of such determinations.

---

9. As the Government put it on pages 6 and 7 of its Brief: "Respondent's position is that it would be most in keeping with the intendment of Congress to hold that every final administrative determination made by a Service official which culminates in a derivative order of deportation *or directly effects its existence or execution* must be deemed to merge in that deportation order so as to be reviewable under Section 106(a) regardless of whether or not the determination was made in the Section 242(b) proceedings themselves, and regardless of

whether it preceded them, succeeded them, or coexisted independently." [Emphasis added].

10. "In Giova v. Rosenberg, 379 U.S. 18 [85 S.Ct. 156, 13 L.Ed.2d 90] (1964) the Court went a step further and held that Section 106(a) encompasses the denial of a post-deportation-order motion to reopen. It is extremely difficult to distinguish the denial of a post-deportation-order motion to reopen, and the situation in the case at Bar, that is a denial of a stay of deportation." Brief for the Government, p. 15.

Moreover, given the detailed examination of the Section in the *Foti* opinion which stressed the tie between its operation and the scope of Section 242(b) hearings, it seems extremely unlikely that the Court would abandon that limitation in a per curiam opinion, even though it had left the question of a motion to reopen undecided in the earlier decision. 375 U.S. at 231, 84 S.Ct. 306, 11 L.Ed.2d 281.

In the instant matter, unlike the situation in *Giova*, the plaintiffs' requests for stays were based on an issue which was not determined in the deportation hearing and which—according to the District Director's own argument—was not capable of being determined therein.[11] Here, the plaintiffs are not challenging the order of deportation, their deportability, or any refusal of discretionary relief permitting them to remain in this country. Rather, they seek a temporary stay of an admittedly valid order pending action on their application for classification as refugees under Section 203(a) (7) of the Act; following action thereon, they are prepared to depart and reapply for entry from abroad.

Nor need the Government fear a tide of efforts to circumvent Section 106(a) by requesting a stay pending appeal of a matter clearly within the ambit of § 106 and then independently appealing the denial of the stay to the District Court.

The request for a stay, by itself, is an ambiguous step which only takes on significance from the grounds upon which it is based. And, if the above interpretation of *Foti* is correct, then the question of whether or not the denial of a stay is within § 106(a) turns upon the petitioner's grounds for that request. That is to say, the Court must examine in each case the relationship between the basis for the requested stay and the range of discretionary relief which falls within the scope of the § 242(b) proceeding.

■ If a stay is sought merely pending review of a determination within the scope of the § 242(b) original hearing, then its denial, like the denial of a motion to reopen in *Giova* will relate back to determinations in that hearing and will be appealable under § 106(a) alone. I decide only that the review of the Dis-

11. As previously noted, the scope of the § 242(b) hearing has been expanding. Under the present regulations, Special Inquiry Officers now have authority in the hearing to determine applications for withholding deportation (243(h)); voluntary departure (244(e)); adjustment of status (245); suspension of deportation (244(a)); creation of record of permanent residence (249); and designation of country of deportation (243(a)). 8 C.F.R. 242.8, 242.17 (1964 Supp.).

Section 203(a) (7) of the Act, under which the plaintiffs have applied for classification, contains two provisions. The first provides for classification as a refugee as a basis for claiming a preference category for conditional entry. The second part of § 203(a) (7) provides for grant of an immigrant visa in lieu of conditional entry in the case of refugee aliens who have applied for adjustment of status after two years in this country. It was evidently anticipated that application for a visa under the second part of § 203 (a) (7) would be made in accordance with the basic provision for adjustment of status under Section 245 of the Act, which is now within the purview of the

Section 242(b) proceeding. See Tai Mui v. Esperdy, supra, 263 F.Supp. at p. 904.

Hence, if plaintiffs simply were applying for such an adjustment of status as refugees entitled to a visa and to adjustment under § 245, the District Director's decision that they were ineligible for such relief would be a determination on a matter which originally fell within the jurisdiction of the Special Inquiry Officer at the original deportation hearing. And, therefore, under *Foti*, it would come within the provisions of § 106(a).

However, the Director's decision to treat their petition as a request for such adjustment is not binding on the plaintiffs who have plainly stated in their affidavits and oral argument that they seek only a classification as refugees, and are willing to apply for conditional entry from abroad following their deportation. The Government cannot consistently maintain at the same time both that the plaintiffs seek a determination which can only be made abroad, and that the denial of their application is only reviewable under a statute [§ 106(a)] pertaining to deportation proceedings in this country.

trict Director's denial of the plaintiffs' request for a stay, based on their application for a determination not within the scope of § 242(b) proceedings, is within the jurisdiction of this Court.

### SUMMARY JUDGMENT

The Government also moves in the alternative for summary judgment on the grounds that the District Director's denial of the stay of deportation and his concomitant rejection of the application for classification as refugees was neither arbitrary nor capricious.

In reviewing administrative decisions of the Immigration and Naturalization Service, this Court is limited to passing upon questions of law so long as the decisions are supported by substantial record evidence. Todaro v. Pederson, 205 F.Supp. 612, 613 (N.D.Ohio, 1961), aff'd. 305 F.2d 377 (6 Cir. 1962) [on opinion below]; cert. denied, 371 U. S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124. If the rejection of the application for classification as refugees under Section 203(a) (7) is neither unlawful, nor arbitrary, nor capricious, then the denial of the application for a stay of deportation was also proper, since that denial was based on the rejection of the application.

The point of contention is a narrow one. The Director contends that plaintiffs do not come within the first part of Section 203(a) (7) since they are not attempting to apply for classification in a country other than the United States. Brief for the Government, pg. 27.

The Section, set out in the margin,[12] requires aliens applying for such classification "to satisfy an Immigration and Naturalization Service officer at an examination *in any non-Communist or non-Communist dominated country * * *.*" [Emphasis supplied]. It is the plaintiffs' contention that 1) this geographical limitation in the statute was intended to permit such classifications being made in the United States; and 2) that the Regulation promulgated by the Attorney General which currently limits applications to those made before officers in Austria, Belgium, France, and Germany, Greece, Italy, and Lebanon, 8 C.F.R. 235, is invalid in that it forecloses applications made in this country.

This issue was fully explored, in the context of the legislative history of Section 203(a) (7) and the appropriate scope of judicial review, by the excellent opinion of Judge Levet in the case of Chan Hing and Lai Cho v. Esperdy, 262 F.Supp. 973 (S.D.N.Y.1966). As Judge Levet pointed out, if the plaintiffs could apply in this country for classification as refugees preparatory to application for conditional entry without regard to the length of time that they had been physically present here, it would nullify the purpose of the two year time period which is required for the procedure of adjustment of status, in lieu of conditional entry, under the second half of

---

12. Section 203(a) (7), 8 U.S.C. § 1153(a) (7), insofar as pertinent provides:

"1153. Allocation of immigrant visas— Categories of preference priorities; per centum limitations; conditional entries; waiting lists.

"(a) Aliens who are subject to the numerical *limitations specified in section* 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows:

" * * *

"(7) Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe * * * to aliens who satisfy an Immigration and Naturalization officer at an examination in any non-Communist or non-Communist-dominat-

ed country, (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have fled (I) from any Communist or Communist-dominated area or country, or (II) from any country within the general area of the Middle East, and (ii) are unable or unwilling to return to such country or area on account of race, religion, or political opinion, and (iii) are not nationals of the countries or areas in which their application for conditional entry is made; or (B) that they are persons uprooted by catastrophic natural calamity as defined by the President who are unable to return to their usual place of abode. * * * "

§ 203(a) (7) and Section 245. See note 9, supra.

Moreover, even if the plaintiffs have been here for two years, they would still be ineligible for such adjustment of their status by virtue of their being alien crewmen. Tai Mui v. Esperdy, supra; 8 C.F.R. 245.1.

■ I concur with Judge Levet that the clear meaning of the first part of Section 203(a) (7) excludes the United States from those countries in which application for a classification as refugee pursuant to conditional entry may be made. It follows that the Attorney General's failure to designate the United States as a country in which such application can be made is not violative of that provision's intent.

■ Finally, it is argued that deportation of the plaintiffs to Hong Kong would unfairly preclude their application for classification entirely, since they would be unable to reach one of the seven countries where classification as refugees may now be made. This may or may not be the case. In any event, such hardship, even if true, does not by itself warrant this Court's substitution of its judgment for the Attorney General's exercise of his delegated power and for his decision not to allow such classification to be made in Hong Kong, at this time. Such matters of policy are within the realm of foreign affairs of the United States whose management has been entrusted to the Executive. See United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936); Chan Hing and Lai Cho v. Esperdy, supra.

■ For the aforesaid reasons, I find 1) that the refusal to act upon the plaintiffs' applications was correct, and was neither arbitrary nor capricious and 2) that the consequent denial of a stay pending action on said applications was a valid exercise of the Director's discretion. Accordingly, the defendant is entitled to summary judgment.

Let an appropriate Order be submitted.