533 F.Supp. 1015 (1982)
Kenneth G. SMITH, Plaintiff,
v.
John LEHMAN, Secretary of the Navy, and the United States Department of the Navy, Defendants.
No. 81 Civ. 1023.
United States District Court, E. D. New York.
February 19, 1982.
*1016 Jack B. Solerwitz, Mineola, N. Y., for plaintiff.
Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Richard H. Dolan, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendants.

MEMORANDUM AND ORDER
McLAUGHLIN, District Judge.
Plaintiff brought this action against a federal official and a federal agency alleging wrongful dismissal from a civilian position as a Special Agent with the Naval Investigative Service ("NIS").[1] He seeks reinstatement, money damages, and back pay.

*1017 I. BACKGROUND
Plaintiff, who was working for the New York State Deputy Attorney General's Office as a Special Investigator, applied for a position with NIS as a Special Agent. He was hired by NIS on October 6, 1980, after a successful interview and background investigation. As part of security clearance procedures, on October 10, 1980, plaintiff completed "DD Form 398", which is a detailed statement of personal history. In November 1980, plaintiff was asked to sign a waiver releasing all records to the Defense Investigative Service ("DIS"). He refused on advice of counsel.
The DIS investigation revealed what appear to be misleading or false statements on two distinct parts of DD Form 398.[2] Plaintiff was told by his supervisor that NIS would undertake an independent investigation and that plaintiff would be requested to furnish a sworn statement. On December 9, 1980, the Regional Director of Operations attempted to interview the plaintiff. Before the Director was able to read plaintiff his rights, however, plaintiff interjected that, upon advice of counsel, he would make no statements at that time.
Plaintiff was fired on December 12, 1980. The letter from the Acting Director of NIS notifying plaintiff of his dismissal states that he was removed for "falsification of an official record."[3] On the effective date of termination, plaintiff allegedly expressed a desire to hold a meeting between the parties and their attorneys. The request was denied. In January, 1981, plaintiff wrote Edward J. Hidalgo, who was then Secretary of the Navy, requesting that he be reinstated. The request was denied with the further finding that the plaintiff's false statement is "inconsistent with the high standards demanded" of NIS Special Agents. Plaintiff has not been employed since his discharge from the Navy.
Plaintiff alleges that the information supplied on DD Form 398 was "honest and true" and claims that defendants' actions were arbitrary and capricious, were not in accord with unspecified applicable law and regulations, and deprived him of his Fifth Amendment right to a hearing. He has not invoked any specific statutes or regulations in support of his claims. As the bases for this Court's jurisdiction, plaintiff alleges that the action arises under the Constitution and the laws of the United States and cites the federal question statute (28 U.S.C. § 1331), the mandamus statute (28 U.S.C. § 1361), the Declaratory Judgment Act (28 U.S.C. § 2201), the "Further Relief" statute (28 U.S.C. § 2202), and Title 7 of the Administrative Procedure Act (5 U.S.C. § 701, et seq.). The matter in controversy is alleged to exceed the sum of $10,000, exclusive of interest and costs.
The defendants now move for a dismissal of the action, or in the alternative for summary judgment, on the ground that because there has been no waiver of sovereign immunity, this Court lacks subject matter jurisdiction. Plaintiff has failed to respond directly to the Government's sovereign immunity defense, arguing only that jurisdiction is established pursuant to 28 U.S.C. § 1331 because plaintiff is entitled to procedural due process under the Fifth Amendment.

II. JURISDICTION
Of the five jurisdictional bases alleged by plaintiff, only one, 28 U.S.C. § 1331, vests this Court with jurisdiction. The Administrative Procedure Act, 5 U.S.C. *1018 §§ 701, et seq., is not jurisdictional and "does not afford an implied grant of subject matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). See Estate of Watson v. Blumenthal, 586 F.2d 925, 932 (2d Cir. 1978).
The Declaratory Judgment Act, 28 U.S.C. § 2201, the "Further Relief" statute, 28 U.S.C. § 2202, and the mandamus statute, 28 U.S.C. § 1361, do not confer jurisdiction but merely provide additional remedies where jurisdiction already exists. See, e.g., Estate of Watson v. Blumenthal, supra, 586 F.2d at 934-35; Warner-Jenkinson Co. v. Allied Chemical Corp., 567 F.2d 184, 186 (2d Cir. 1977); Lam Tat Sin v. Esperdy, 227 F.Supp. 482 (S.D.N.Y.1963), aff'd, 334 F.2d 999 (2d Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 176 (1964). However, because plaintiff has alleged that defendants' actions (1) were arbitrary and capricious, in violation of the Administrative Procedure Act, and (2) deprived him of his procedural due process rights under the Fifth Amendment of the Constitution, the Federal Question statute, 28 U.S.C. § 1331, does confer jurisdiction in this case. Califano v. Sanders, 430 U.S. at 106-8, 97 S.Ct. at 984-85; Doe v. United States Civil Service Comm'n, 483 F.Supp. 539, 558 (S.D.N.Y. 1980). At the same time, because the remedies of reinstatement and damages requested by plaintiff would require expenditures from the public treasury, (Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947)), and would compel the Government to act, (Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1948)), we are faced with the "Procrustean task" of reconciling myriad sovereign immunity decisions. Malone v. Bowdoin, 369 U.S. 643, 646, 82 S.Ct. 980, 982, 8 L.Ed.2d 168 (1962).

III. SOVEREIGN IMMUNITY
It is elementary that the United States may not be sued without its consent. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1352, 63 L.Ed.2d 607 (1980); Affiliated Ute Citizens v. United States, 406 U.S. 128, 141, 92 S.Ct. 1456, 1466, 31 L.Ed.2d 741 (1972). Consent usually takes the form of an "unequivocally expressed" waiver by Congress. United States v. Mitchell, supra, quoting United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). See United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Plaintiff, regrettably, has not cited any specific statute that waives sovereign immunity. However, there are at least two waiver statutes that arguably might apply in this case: Section 702 of the APA and the Federal Question statute itself. Section 702 provides:
An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.
Section 1331 provides:
The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.
With respect to claims under the APA for equitable relief,[4] the Second Circuit, considered these sections but stated in no uncertain terms that, although there is federal question jurisdiction, the Government may nevertheless invoke the defense of sovereign immunity. Estate of Watson *1019 v. Blumenthal, supra, 586 F.2d at 932; Doe v. Civiletti, 635 F.2d 88, 94 (2d Cir. 1980); Doe v. United States Civil Service Comm'n, 483 F.Supp. 539, 560 (S.D.N.Y.1980). But see Jaffe v. United States, 592 F.2d 712, 718-19 (3d Cir. 1979); Neal v. Secretary of the Navy, 472 F.Supp. 763, 770-71 (E.D.Pa. 1979). The defendants in this case have invoked the sovereign immunity defense as to the plaintiff's claims under the Administrative Procedure Act. This Court, accordingly, must recognize the defense.
Sovereign immunity, however, is not a defense to plaintiff's constitutional claims that the Navy violated his right to procedural due process. In Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. at 689-91, 69 S.Ct. at 1461-62, the Supreme Court carved out an amorphous exception to the sovereign immunity doctrine, stating that it does not bar suits, like this one, against government officials where "power has been conferred in form but the grant is lacking in substance because of constitutional invalidity."[5]Id. See Berk v. Laird, 429 F.2d 302, 306 (2d Cir. 1970), cert. denied sub nom. Orlando v. Laird, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971); Cortright v. Resor, 325 F.Supp. 797, 813 (E.D.N.Y.), rev'd on other grounds, 447 F.2d 245 (2d Cir. 1971), cert. denied sub nom. Cortright v. Froehlke, 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 (1972). Thus, sovereign immunity is not a bar to suits against defendants charged with violating the Constitution; and this Court has jurisdiction under Section 1331 to review the constitutionality of the defendants' conduct. See Hampton v. Mow Sun Wong, 426 U.S. at 93 n.5, 96 S.Ct. at 1900 n.5; Doe v. United States Civil Service Comm'n, 483 F.Supp. 539 (S.D.N.Y. 1980).

IV. PROCEDURAL DUE PROCESS
Although this Court has jurisdiction to review plaintiff's procedural due process claims, summary judgment must be granted to the defendants because neither a property interest nor a liberty interest is implicated in this case.

A. Property Interest

It is axiomatic that an individual has no property interest in federal employment unless he has a specific entitlement to that position. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Subject to narrow due process limitations, the federal government has the right to summarily discharge its employees. See Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Indeed, "[d]ismissal from federal employment is largely a matter of executive agency discretion. Particularly is this true during the probationary period." Toohey v. Nitze, 429 F.2d 1332, 1334 (9th Cir. 1970).
Accordingly, a probationary employee, like the plaintiff, has no entitlement to continued employment. Procedurally, all a probationary employee is entitled to is a right to be notified prior to his termination "in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804 (1981).[6]See Perlongo v. *1020 United States, 566 F.2d 1192 (Ct.Cl.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 2844, 56 L.Ed.2d 785 (1978). The only right of appeal is to the Merit Systems Protection Board ("MSPB"); and this lies only in cases where the probationer alleges discrimination or that his discharge was not in accord with proper procedure.[7] 5 C.F.R. § 315.806 (1981).
In this case, although he alleges that his answers were honest and true, the plaintiff made statements on his DD Form 398 (while he was a probationary employee) that are contradicted by publicly available documents and by facts uncovered in the DIS investigation. This conduct obviously does not accord with the high standards expected of NIS agents. Moreover, when provided with an opportunity to explain his answers, he refused, on advice of counsel.
I find, therefore, that plaintiff was notified and dismissed in accordance with the procedures required by § 315.804. He was entitled to no more.

B. Liberty Interest

The Fifth Amendment's due process clause protects a "liberty interest"; and this encompasses an "individual's freedom to work and earn a living." Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1100-01 (9th Cir. 1981). However, an opportunity to be heard is essential only where "a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Board of Regents v. Roth, supra, 408 U.S. at 573, 92 S.Ct. at 2707 quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). In such a case due process requires "an opportunity to refute the charges," Id. 92 S.Ct. at 2707, and the purpose is to "provide the person an opportunity to clear his name." Id. 92 S.Ct. at 2707 n. 12. See Wisconsin v. Constantineau, supra; Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).
When a plaintiff's claim involves "stigmatization" resulting from termination, a Court will intervene only if the stigmatizing information is false, (Codd v. Velger, supra, 429 U.S. at 627-28, 97 S.Ct. at 883-84), or has been made public by the governmental agency involved. Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1970). See Gentile v. Wallen, 562 F.2d 193, 197 (2d Cir. 1977).
There is no claim in this case that the stigmatizing information was made public. For that reason alone, plaintiff's action must be dismissed. Moreover, despite what plaintiff alleges, there can be no dispute that what he wrote on his DD Form 398, i.e., that his case in Albany had been dismissed (when in fact he had been fined and given a suspended sentence) was false. "[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." Codd v. Velger, 429 U.S. at 627, 97 S.Ct. at 883. Wehner v. Levi, 562 F.2d 1276 (D.D.C.1977).
In this case, the plaintiff cannot "challenge the substantial truth" of the NIS charge that he filed a false statement. Thus, a hearing in this case could only serve to let plaintiff try to explain away why he wrote the answers as he did. Although plaintiff might demonstrate that it "`might have been all a mistake ...' [that] is not enough to raise an issue about the substantial accuracy of the report." Codd v. Velger, 429 U.S. at 628, 97 S.Ct. at 884 (quoting plaintiff's excuse in that case).
Whether or not plaintiff receives a hearing, the fact of his arrest and its disposition will remain publicly available in the Clerk's *1021 Office in Albany, New York, and in direct contradiction to plaintiff's answer on DD Form 398. In addition, it bears emphasis that before he was terminated plaintiff was provided with an opportunity to explain his answers on the DD Form 398. On advice of counsel, however, he waived that opportunity. Plaintiff cannot now be heard to demand a hearing in this Court.
In sum, the Court finds that no property or liberty interests are involved in this case and that plaintiff has suffered no due process deprivation. See Stewart v. Civil Service Comm'n of the City of New York, App.Div.2d, 446 N.Y.S.2d 948 1982. For all the foregoing reasons, the defendants' motion for summary judgment is granted.
SO ORDERED.
NOTES
[1] The position was characterized as a "critical sensitive position ... with access to Top Secret material and information."
[2] In response to item 18, which inquires into prior arrests, plaintiff wrote: "08-01-80 Disorderly Conduct, Albany Police Court, Albany, New York, Judge KEEGAN presided. Case dismissed." In fact, plaintiff had been arrested on a charge of criminal impersonation, had pled guilty to the reduced charge of disorderly conduct, was fined, and given a suspended sentence.

In response to item 13, concerning why he left his job with the New York State Deputy Attorney General's Office, plaintiff wrote: "Not a permanent agency." The Deputy Attorney General's Office, however, had asked him to resign the day it learned of his arrest.
[3] See 18 U.S.C. § 1001. NIS forwarded its file to the United States Attorney's Office in Philadelphia for its prosecutorial opinion. No charges were filed.
[4] Under the terms of section 702, claims for money damages under the APA are expressly barred by the doctrine of sovereign immunity.
[5] Not surprisingly, the Larson opinion has sparked considerable controversy. The Court in footnote 11 complicated the exception by stating that the "suit may fail" if the relief requested requires affirmative action by the sovereign, as is the case here. Although the Second Circuit suggested in 1971 that footnote 11 may describe the current state of the law, Knight v. New York, 443 F.2d 415, 421 (2d Cir. 1971), the Supreme Court has applied the exception without reference to the footnote. See Malone v. Bowdoin, 369 U.S. 643, 648, 82 S.Ct. 980, 983, 8 L.Ed.2d 168 (1963); Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1962). Moreover, in 1975, the Court expressly approved and affirmed a district court ruling that sovereign immunity was not a defense to an action challenging an allegedly unconstitutional civil service regulation. Hampton v. Mow Sun Wong, 426 U.S. 88, 93 n.5, 96 S.Ct. 1895, 1900 n.5, 48 L.Ed.2d 495 (1975).
[6] There can be no dispute that this regulatory scheme is constitutional. See Sampson v. Murray, 415 U.S. 61, 80-81, 94 S.Ct. 937, 948-49, 39 L.Ed.2d 166 (1979); Jaeger v. Freeman, 410 F.2d 528, 531 (5th Cir. 1969); Jenkins v. United States Post Office, 475 F.2d 1256, 1257 (9th Cir. 1973); Heaphy v. United States Treasury Dept., 354 F.Supp. 396, 399-401 (S.D.N.Y.1973); Christian v. New York State Dept. of Labor, 347 F.Supp. 1158, 1161 (S.D.N.Y.1972) ("Certainly Congress intended that Federal employers should have an unfettered right to terminate probationary employees. No termination hearing is prescribed or required nor should it be."); Beeson v. Hudson, 630 F.2d 622, 626 (8th Cir. 1980) (a probationary employee "can be dismissed at the virtually unreviewable discretion of his employing agency for unsatisfactory performance or conduct during the probationary period").
[7] Plaintiff has alleged neither ground in this case; and even if he had, his suit would be dismissed for failure to exhaust his administrative remedy of appeal to the MSPB.