## MALONE *v.* BOWDOIN ET AL.

No. 113.   Argued March 20, 1962.—Decided May 14, 1962.

*Daniel M. Friedman* argued the cause for petitioner. On the briefs were *Solicitor General Cox* and *Roger P. Marquis.*

*William Buford Mitchell* argued the cause for respondents.   With him on the briefs was *John Burke Harris, Jr.*

MR. JUSTICE STEWART delivered the opinion of the Court.

This litigation began in a Georgia court when the respondents filed a common law action of ejectment against the petitioner, a Forest Service Officer of the United States Department of Agriculture.[1]   The basis

---

[1] The original pleading was in the fictitious common law form in use in Georgia, Ga. Code Ann. § 33–111, alleging that John Doe, as a lessee of the respondents, had entered the land in question and had been forceably ejected by Richard Roe.   The petitioner and the United States were served with process, which was accompanied by a

for the suit was the respondents' claim that they were the rightful owners of certain land occupied by the petitioner.[2] The action was removed to a Federal District Court under the provisions of 28 U. S. C. § 1442 (a).[3] The removal petition stated that the action "involves lands that were acquired by the United States of America by deed on June 6, 1936," that the petitioner's "official duties as a Forest Service Officer required him to be, and he was, in charge and in possession of the land described in said ejectment suit," and that "all his acts in connection with

"Notice to the Real Defendants," stating that Richard Roe had "acted as casual ejector only." The subsequent dismissal of the United States as a petitioner is not challenged here.

[2] This assertion did not appear on the face of the original pleadings because of their fictitious form. In a subsequent brief, however, the respondents explained the basis of their claim. They alleged that an 1857 will had devised a life estate in the land to Martha A. Sanders, with remainder over to her children, and that in 1873 Mrs. Sanders had devised the land in fee to mesne grantors of the United States, which had acquired title in 1936. Mrs. Sanders died in 1928, and the respondents claimed to be the remaindermen under the 1857 will.

[3] 28 U. S. C. § 1442 (a) provides:

"A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

"(2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

"(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties;

"(4) Any officer of either House of Congress, for any act in the discharge of his official duty under an order of such House."

the matters charged in said complaint were committed by him under color of his said office."

The petitioner filed a motion to dismiss upon the ground that the suit was in substance and effect one against the United States, which had not consented to be sued or waived its immunity from suit. Noting that the respondents had conceded in a pretrial conference that the petitioner in occupying the land was acting solely as an official or employee of the United States, the District Court granted the motion to dismiss, relying upon *Larson* v. *Domestic & Foreign Corp.*, 337 U. S. 682.[4] On appeal, the judgment was reversed, one judge dissenting, 284 F. 2d 95.[5] We granted certiorari to consider the scope of sovereign immunity in suits of this kind. 368 U. S. 811. We agree with the District Court that the doctrine of the *Larson* case required dismissal of this action, and we therefore reverse the judgment of the Court of Appeals.

For its view that the sovereign immunity of the United States did not bar the maintenance of this suit, the Court of Appeals found principal support in *United States* v. *Lee,* 106 U. S. 196. In that case the Virginia estate of General Robert E. Lee had been acquired by the United States for nonpayment of taxes, although the taxes had in fact been tendered by a third party. An ejectment action was brought against the governmental custodians of the land, upon which a federal military installation and a cemetery had been established. The trial court found that the tax sale had been invalid, and that title to the land was in the plaintiff. This Court upheld a judgment in favor of the plaintiff upon the trial court's finding that the defendants' possession of the land was illegal, holding

---

[4] The District Court's opinion is reported *sub nom. Doe* v. *Roe,* 186 F. Supp. 407.

[5] A petition for rehearing was denied, 287 F. 2d 282.

that a suit against them under such circumstances was not a suit against the sovereign.

In a number of later cases, arising over the years in a variety of factual situations, the principles of the *Lee* case were approved.[6] But in several other cases which came to the Court during the same period, it was held that suits against government agents, specifically affecting property in which the United States claimed an interest, were barred by the doctrine of sovereign immunity.[7] While it is possible to differentiate many of these cases upon their individualized facts, it is fair to say that to reconcile completely all the decisions of the Court in this field prior to 1949 would be a Procrustean task.

The Court's 1949 *Larson* decision makes it unnecessary, however, to undertake that task here. For in *Larson* the Court, aware that it was called upon to "resolve the conflict in doctrine" (337 U. S., at 701), thoroughly reviewed the many prior decisions, and made an informed and carefully considered choice between the seemingly conflicting precedents.

In that case a suit had been brought against the War Assets Administrator to enjoin him from selling surplus coal which, it was alleged, the Administrator had already sold to the plaintiff. The theory of the action was that where "an officer of the Government wrongly takes or

---

[6] See *Cunningham* v. *Macon & Brunswick R. Co.*, 109 U. S. 446, 452; *Tindal* v. *Wesley*, 167 U. S. 204; *Scranton* v. *Wheeler*, 179 U. S. 141, 152–153; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 619–620; *Goltra* v. *Weeks*, 271 U. S. 536, 545; *Ickes* v. *Fox*, 300 U. S. 82, 96; *Great Northern Life Ins. Co.* v. *Read*, 322 U. S. 47, 50–51; *Land* v. *Dollar*, 330 U. S. 731.

[7] See *Stanley* v. *Schwalby*, 162 U. S. 255; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Naganab* v. *Hitchcock*, 202 U. S. 473; *Louisiana* v. *Garfield*, 211 U. S. 70; *Goldberg* v. *Daniels*, 231 U. S. 218; *New Mexico* v. *Lane*, 243 U. S. 52; *Morrison* v. *Work*, 266 U. S. 481; cf. *Mine Safety Co.* v. *Forrestal*, 326 U. S. 371, 374–375; *Wells* v. *Roper*, 246 U. S. 335.

holds specific property to which the plaintiff has title, then his taking or holding is a tort, and 'illegal' as a matter of general law, whether or not it be within his delegated powers," and that the officer "may therefore be sued individually to prevent the 'illegal' taking or to recover the property 'illegally' held." 337 U. S., at 692. The Court held that this theory was not adequate to support a conclusion that the relief asked was not relief against the sovereign.

Cutting through the tangle of previous decisions, the Court expressly postulated the rule that the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is "not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." 337 U. S., at 702. Since the plaintiff had not made an affirmative allegation of any relevant statutory limitation upon the Administrator's powers, and had made no claim that the Administrator's action amounted to an unconstitutional taking, the Court ruled that the suit must fail as an effort to enjoin the United States.

While not expressly overruling *United States* v. *Lee, supra,* the Court in *Larson* limited that decision in such a way as to make it inapplicable to the case before us. Pointing out that at the time of the *Lee* decision there was no remedy by which the plaintiff could have recovered compensation for the taking of his land,[8] the Court interpreted *Lee* as simply "a specific application of the constitutional exception to the doctrine of sovereign

---

[8] See 337 U. S., at 697, n. 17. Unlike the situation in the *Lee* case, there has been at all relevant times a tribunal where the respondents could seek just compensation for the taking of their land by the United States. That tribunal is the Court of Claims. *United States* v. *Causby,* 328 U. S. 256, 267.

immunity." 337 U. S., at 696. So construed, the *Lee* case has continuing validity only "where there is a claim that the holding constitutes an unconstitutional taking of property without just compensation." *Id.*, at 697.

No such claim has been advanced in the present case. Nor has it been asserted that the petitioner was exceeding his delegated powers as an officer of the United States in occupying the land in question,[9] or that he was in possession of the land in anything other than his official capacity. This suit, therefore, is not within the class of cases in which, under *Larson,* specific relief can be obtained against a government officer. Accordingly, it was rightly dismissed by the District Court as an action which in substance and effect was one against the United States without its consent.

*Reversed.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, dissenting.

*United States* v. *Lee,* 106 U. S. 196, serves a useful function and should be followed here. There, as here, the contest was over real estate which an officer of the Federal Government held against the claim of the plaintiff. Here, as there, if the federal agent's possession of the

---

[9] If such a claim is to be made, "it is necessary that the plaintiff set out in his complaint the statutory limitation on which he relies." *Larson* v. *Domestic & Foreign Corp.,* 337 U. S. 682, 690. While this requirement could probably not have been precisely complied with here because of the fictitious form of pleading involved, no such claim was ever suggested at any stage of the proceedings.

land is illegal, the suit is not against the sovereign. Mr. Justice Miller, speaking for the Court, said:

> "The instances in which the life and liberty of the citizen have been protected by the judicial writ of *habeas corpus* are too familiar to need citation, and many of these cases, indeed almost all of them, are those in which life or liberty was invaded by persons assuming to act under the authority of the government. . . .
>
> "If this constitutional provision is a sufficient authority for the court to interfere to rescue a prisoner from the hands of those holding him under the asserted authority of the government, what reason is there that the same courts shall not give remedy to the citizen whose property has been seized without due process of law, and devoted to public use without just compensation?" *Id.*, at 218.

*United States* v. *Lee* was a five-to-four decision. But as late as 1947 seven members of the Court agreed to the statement in *Land* v. *Dollar,* 330 U. S. 731, 737, that "[w]here the right to possession or enjoyment of property under general law is in issue, and the defendants claim as officers or agents of the sovereign, the rule of *United States* v. *Lee, supra,* has been repeatedly approved." Two years later in *Larson* v. *Domestic & Foreign Corp.,* 337 U. S. 682, the case of *United States* v. *Lee* was attempted to be distinguished in the manner indicated by the Court. But the *Larson* decision was six to three, Mr. Justice Rutledge concurring in the result and my vote being the fifth. But I explained my concurrence on the following grounds:

> "I think that the principles announced by the Court are the ones which should govern the selling of government property. Less strict applications of those principles would cause intolerable interference with public administration. To make the right to

> sue the officer turn on whether by the law of sales title had passed to the buyer would clog this governmental function with intolerable burdens. . . ." *Id.*, at 705.

The holding in *United States* v. *Lee* has thus not been repudiated or necessarily restricted by anything decided prior to today.

The Court is quite correct in saying that all of our decisions in this field cannot easily be reconciled; and the same will doubtless be true if said by those who sit here several decades hence. The reason the decisions are not consistent is that policy considerations, not always apparent on the surface, are powerful agents of decision. Thus the *Larson* case was a suit for specific performance of a contract to sell coal, a matter that courts had long left to damage suits. As I said in my separate concurrence in that case, any other rule would "clog" government procurement "with intolerable burdens." 337 U. S., at 705.

Ejectment, on the other hand, is the classic form of action to try title. It takes place in the locality where the land is located. No judges are better qualified to try it than the local judges. It is a convenient and ready form of remedy for possession of land. Moreover, the United States, not being a party, is not bound by the state court decree. If it is aggrieved by the state or federal court ruling on title, it can bring its arsenal of power into play. Eminent domain—with the power immediately to take possession—is available.

If, however, the citizen must bow to the doctrine of sovereign immunity, he is precluded from any relief except a suit for damages under 28 U. S. C. § 1346 (b) or 28 U. S. C. § 1346 (a)(2), or 28 U. S. C. § 1491. This places the advantage with an all-powerful Government, not with the citizen. He may, as the Court says, go into court and get the value of his property. But he does not

get his property, even though we assume, as we must, that the Government is not the rightful claimant.

The result is at war with our prior decisions. Those remedies with which the Court leaves the property owner are not "special remedies" provided to "displace those that otherwise would be at the plaintiff's command." See *Sloan Shipyards* v. *United States Fleet Corp.*, 258 U. S. 549, 567. As stated by MR. JUSTICE FRANKFURTER:

> "When there is such a special remedy the suit against the officer is barred, not because he enjoys the immunity of the sovereign but because the sovereign can constitutionally change the traditional rules of liability for the tort of the agent by providing a fair substitute. *Crozier* v. *Fried,* 224 U. S. 290; *Richmond Screw Anchor Co.* v. *United States,* 275 U. S. 331. But the general statute permitting suit in the Court of Claims in certain instances against the Government is not a statute that provides that remedies otherwise at the plaintiff's command are to be displaced. A holding that the availability of an action for monetary damages in the Court of Claims against the United States prevents a suit at law, or, if the necessary requisites for equity jurisdiction are present, in equity, against the governmental agent, would be as novel as it is indefensible in the light of the settled course of decisions. Indeed, this argument is not novel; it has been explicitly negatived in at least two cases. See *Sloan Shipyards Corp.* v. *United States Fleet Corp.,* 258 U. S. 549, 567, 568; *Land* v. *Dollar,* 330 U. S. 731, 738." *Larson* v. *Domestic & Foreign Corp., supra,* at 722–723 (dissenting opinion).

What Mr. Justice Miller said in *United States* v. *Lee, supra,* 220, 221, needs repeating:

> "No man in this country is so high that he is above the law. No officer of the law may set that law at

defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.

.        .        .        .        .

"It cannot be, then, that when, in a suit between two citizens for the ownership of real estate, one of them has established his right to the possession of the property according to all the forms of judicial procedure, and by the verdict of a jury and the judgment of the court, the wrongful possessor can say successfully to the court, Stop here, I hold by order of the President, and the progress of justice must be stayed. That, though the nature of the controversy is one peculiarly appropriate to the judicial function, though the United States is no party to the suit, though one of the three great branches of the government to which by the Constitution this duty has been assigned has declared its judgment after a fair trial, the unsuccessful party can interpose an absolute veto upon that judgment by the production of an order of the Secretary of War, which that officer had no more authority to make than the humblest private citizen."

Sovereign immunity has become more and more out of date, as the powers of the Government and its vast bureaucracy have increased. *Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U. S. 381, 390 *et seq.* To give the agent immunity from suit is, to use the words of Mr. Justice Holmes:

"a very dangerous departure from one of the first principles of our system of law. The sovereign properly so called is superior to suit for reasons that often have been explained. But the general rule is that any person within the jurisdiction always is amenable to the law. If he is sued for conduct harmful to the

plaintiff his only shield is a constitutional rule of law that exonerates him. Supposing the powers of the Fleet Corporation to have been given to a single man we doubt if anyone would contend that the acts of Congress and the delegations of authority from the President left him any less liable than other grantees of the power of eminent domain to be called upon to defend himself in court. An instrumentality of government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts." *Sloan Shipyards* v. *United States Fleet Corp., supra,* pp. 566–567.

The balance between the convenience of the citizen and the management of public affairs is a recurring consideration in suits determining when and where a citizen can sue a government official. See *Williams* v. *Fanning,* 332 U. S. 490. The balance is, in my view, on the side of the citizen where he claims realty in the Government's possession and where there are ready means of adjudicating the title. If legal title is actually in the claimant, if the action of the official in taking possession under authority of the United States is *ultra vires,* what objectionable interference with governmental functions can be said to exist?

I am authorized to say that Mr. Justice Harlan agrees with this opinion.