**DELAWARE VALLEY CONSERVATION ASSOCIATION et al.,**
**Plaintiffs,**

v.

**Stanley R. RESOR, Individually and as Secretary of the Department of the Army of the United States of America, Stewart L. Udall, Individually and as Secretary of the Interior of the United States of America, and W. F. Cassidy, Individually and as Chief of Engineers of the Department of the Army of the United States of America, Defendants.**

**Civ. No. 9675.**

United States District Court
M. D. Pennsylvania.

June 5, 1967.

182

Robert P. Garbarino, Arthur J. Kania, Austin J. McGreal, Crumlish & Kania, Eugene F. Brazil, Philadelphia, Pa., for plaintiffs.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendants.

## OPINION

NEALON, District Judge.

Plaintiffs, Delaware Valley Conservation Association, a non-profit Delaware corporation, and over six hundred individual property owners, commenced this action seeking to enjoin the defendants from proceeding with plans for the development of the Delaware Water Gap National Recreation Area and the Tocks Island Reservoir Project.[1] The defendants are Government officials, viz., Secretary of the Army, Secretary of the Interior, and Chief of Engineers of the Department of the Army, and are being sued individually and in their official capacities. Defendants filed a motion to dismiss or, in the alternative, for summary judgment, and this motion is now before the Court.

---

1. The relief sought includes, inter alia, " * * * an injunction permanently enjoining and restraining the defendants * * * from (1) Proceeding, directly or indirectly, with prosecution of the Delaware Water Gap National Recreation Area and Tocks Island Reservoir Project."

Initially, the factual background of this case as gleaned from the pleadings and briefs, should be outlined in order to put the issues raised in proper perspective. The Tocks Island Reservoir Project was authorized by Congress in 1962 as a multiple-purpose project to include facilities for water conservation and supply, flood control, recreation and hydroelectric power. The statutory purposes were to be accomplished under the direction of the Secretary of the Army and the supervision of the Chief of Engineers. In 1965, as an integral part of the Tocks Island Reservoir Project, Congress authorized the establishment of the Delaware Water Gap National Recreation Area and the Secretary of the Army was authorized to acquire properties within the area and, after acquisition, to transfer jurisdiction over the lands to the Secretary of the Interior. The Reservoir Project and the Recreation Area are scheduled to be in full operation no later than 1975, and Congress has also authorized to be appropriated to the Secretaries of the Army and the Interior, for their respective purposes, the sums of $192,400,000 and $37,412,000. The Congressional appropriation for these sums has not yet been made, although some funds are available from the Land and Water Conservation Fund, pursuant to an authorization of $6,339,500. The Reservoir Project is designed to have a flood control storage capacity of 89.6 billion gallons, which purportedly will aid in reducing flood stages along the Delaware River in Pennsylvania and New Jersey. The project is geared to provide a long-term storage capacity of 133.6 billion gallons which may be used to satisfy the future water supply needs of the Trenton-Philadelphia area. According to Government plans, the long-term storage capacity will create a recreational pool of 12,100 acres and over 100 miles of shoreline. The proposed development of ten major recreation sites within project limits is expected to contribute to the recreational needs of the heavily populated Philadelphia-New York City complex. Needless to say, this project is an ambitious and gigantic undertaking.

Plaintiffs, in their brief, contend that " * * * (t)he complaint avers that said defendants individually and in concert are, inter alia, unlawfully proceeding with acquisition and condemnation of lands and waters and entering into power contracts for the so-called Tocks Island Reservoir Project and Delaware Water Gap National Recreation Area without statutory authority, in violation of applicable law and without funds to pay just compensation, and that said reservoir is geologically unsound and unfeasible and will constitute a public nuisance and a clear and present danger to the public health, safety and welfare." It should be noted here that these allegations in the complaint are set forth in broad, conclusory and extremely general terms. Notwithstanding these allegations, defendants assert, in support of their motion, that (1) the Court lacks jurisdiction because plaintiffs' suit against them is in effect a suit against the United States to which it has not consented; (2) the relief sought by the plaintiffs would invade the powers of the officers of the executive branch to whom the operation of this project has been delegated and would violate the doctrine of separation of powers, and (3) the pleadings fail to state a claim upon which relief can be granted.

As to the jurisdictional argument, the law is clear that if the relief sought is against the sovereign itself, even though the suit is nominally addressed to individual Governmental officers, then the Court has no jurisdiction. If such is the case, " * * * then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction." Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. However, there may be instances of suits for specific relief against officers of the sover-

eign which are not suits against the sovereign. If the officer purports to act as an individual and not as an official, a suit directed against that action is not a suit against the sovereign. Also, where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. As a result, he is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. Larson v. Domestic and Foreign Corp. (supra). In Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168, the rule applicable to such situations was expressed as follows:

> " * * * the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual *only* if the officer's action is 'not within the officer's statutory powers *or*, if within those powers, *only* if the powers, or their exercise in the particular case, are constitutionally void.' " (Emphasis supplied.)

Moreover, since the jurisdiction of the Court to hear such a case may depend upon the decision which it ultimately reaches on the merits, it is necessary that the plaintiffs set out in their complaint affirmative allegations of any relevant statutory limitation upon the federal officer's powers or, if the officer's action is within his statutory powers, then explicit and appropriate allegations that these statutory powers, or their exercise in the particular case, are constitutionally void.

Turning to the case before us, we must examine plaintiffs' complaint to determine whether sufficient allegations have been made to satisfy the jurisdictional requirements.

As hereinbefore noted, the allegations in the complaint are not affirmative, explicit or appropriate, but are couched in loose, inexact and sweeping language. For example, paragraph 16 (a) of the complaint charges: "(a) The defendants are proceeding to acquire land without statutory or legal authority and in violation of the statutes under which they are purporting to proceed." In the absence of an affirmative allegation specifically identifying the limitation on the individual defendant's statutory powers or their conduct exceeding their statutory authority, then paragraph 16(a) provides no firm footing justifying the conclusion that plaintiffs have indeed pleaded an exception to the rule laid down in Larson and Malone (supra), both of which were disposed of on motions to dismiss. Plaintiffs cite numerous cases, such as Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1965), for the proposition that on a motion to dismiss all well-pleaded facts in the complaint must be accepted as true and the complaint should not be dismissed unless it appears to a certainty that plaintiffs would not be entitled to relief under any state of facts which could be proved in support of their claims. However, we are confronted here initially with the question of the Court's acquisition of jurisdiction over the defendants and not with the issue of failure to state a claim upon which relief can be granted. Plaintiffs do not satisfy the jurisdictional prerequisites in cases of this nature by filing a generalized pleading and then relying on liberal pleading interpretations. That the Supreme Court did not intend such bare allegations to suffice where sovereign immunity may be involved is best demonstrated by the repeated statements throughout the Larson[2] and Malone[3] opinions that more specificity is required. There is a complete lack of reference to any applicable

---

2. " * * * it is necessary that the plaintiff set out in his complaint the statutory limitation on which he relies." 337 U.S. 682, 690, 69 S.Ct. 1457, 1461.

3. "Since the plaintiff had not made an affirmative allegation of any relevant statutory limitation upon the Administrator's powers, and had made no claim that the Administrator's action amounted to an unconstitutional taking, * * * the suit must fail as an effort to enjoin the United States." 369 U.S. 643, 647, 82 S.Ct. 980, 983.

statute limiting defendants' powers, with the exception of a blanket assertion in paragraph 16(1) of the complaint that "(d)efendants have or are about to enter into contracts or activities in violation of the Federal Power Act, 49 Stat. 863, 16 U.S.C.A. 791(a) and 58 Stat. 890, 16 U.S.C.A. 825s." But this bare allegation does not survive the "affirmative allegation" test laid down by the Supreme Court. If a plaintiff is to contend that the doctrine of sovereign immunity is not applicable even though the defendant officials on the surface apppear to be acting properly, then that plaintiff should clearly and expressly set forth allegations in the complaint revealing the factual and legal foundation on which he relies. For if we are to delay the progress of an undertaking of this magnitude, then we should be able to proceed with confidence that the matter and the parties are properly before us. As was noted by the Court in Larson:

> "For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act. There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, 'the interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief. * * * ' "

The power of Congress to institute projects of this nature cannot be seriously questioned. See United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940);

United States v. Gerlach Live Stock Co., 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950). Moreover, Congress usually confers authority to condemn land by general statutes and authorizes projects and appropriation of money therefor in general terms. United States v. Bowman, 367 F.2d 768 (7th Cir. 1966); Seneca Nation of Indians v. Brucker, 104 U.S. App.D.C. 315, 262 F.2d 27 (1958). The fact that Congress has not actually appropriated all the money eventually needed for this project does not render it constitutionally infirm or deprive plaintiffs of due process of law as undertakings of this enormity must proceed on a long range, step-by-step and carefully organized basis. There can be no present contention that plaintiffs are not to receive just compensation for their properties. The conclusion is inescapable that plaintiffs' main thrust is against the very creation and operation of this federal project and not with any actions by the defendants in excess of their statutory powers or of the constitutional infirmity of these powers.

It cannot be doubted that, for all practical purposes, the Government will be "stopped in its tracks" until the present action is determined. This result, albeit a temporary one, should not be allowed to take place unless plaintiffs have satisfactorily pleaded the jurisdictional ingredients required in those cases in which a Congressionally authorized Government project is sought to be permanently restrained. Therefore, I conclude that plaintiffs have failed to allege affirmatively and explicitly sufficient factual and legal averments that defendants' actions were not within their statutory powers or, if within those powers, that their exercise would be constitutionally void. Having disposed of the motion on jurisdictional grounds, I have not considered the other points raised by defendants.

Complaint dismissed.