Isiah **HADNOTT** et al., Plaintiffs,

v.

Melvin R. **LAIRD**, individually and in his capacity as Secretary of Defense of the United States

and

Robert L. Kunzig, individually and in his capacity as Administrator of General Services Administration, Defendants,

American Can Company

and

Scott Paper Company, Intervenor-Defendants.

Civ. A. No. 365–70.

United States District Court, District of Columbia.

Aug. 27, 1970.

George Cooper, New York City, Richard M. Sobol, Washington, D. C., for plaintiffs.

Irwin Goldbloom, Atty., Dept. of Justice, William D. Ruckelshaus, Asst. Atty. Gen., Thomas A. Flannery, U. S. Atty., for defendants.

Roberts B. Owen, Jerome Ackerman, Washington, D. C., for intervenor-defendants American Can Co. and Scott Paper Co.

## OPINION

WILLIAM B. JONES, District Judge.

This action is brought by 115 plaintiffs on their own behalf and "on behalf of all black employees, applicants for employment, and prospective applicants for employment at the Southern facilities" of eleven companies which are major suppliers of paper products to the Department of Defense or the General Services Administration or both.[1] Injunctive and declaratory relief is sought against the two defendants, the Secretary of Defense and the Administrator of General Services Administration. Specifically plaintiffs request this Court (1) to enter a declaratory judgment that the award of government contracts by the defendants, their agents and employees, to the companies named in the complaint, and to the latters' prime contractors, and the failure of defendants to enforce against the companies their contractual commitment to non-discrimination, involves the Federal Government in racially discriminatory practices, and constitutes Federal support and approval of those practices, in violation of the rights of plaintiffs and the class they represent under the due process clause of the Fifth Amendment to the United States Constitution; and (2) to enjoin the Secretary of Defense and Administrator of General Services Administration from awarding any further contracts to the

companies and to require the defendants to cancel or terminate the existing government contracts with those companies until such time as all racially discriminatory employment practices have been eliminated.

Defendants have moved to dismiss this action, or in the alternative, for a summary judgment.

American Can Company and Scott Paper Company are two of the companies about whose employment practices plaintiffs complain. These companies have intervened as defendants. They have filed a joint motion to dismiss.

Plaintiffs allege in their complaint that the companies named therein have failed to comply with their contracted commitment to non-discrimination by denying or limiting Negro employees promotions while granting promotional rights to white employees; by discouraging or preventing Negro employees from transferring to jobs formerly held by white employees only; by using written personnel tests, which have not been shown to be predictive of job performance, as a condition of hiring or promotion or transfer which tests disqualify Negro applicants and employees in substantially greater proportion than they disqualify white applicants and employees; and by failing to take affirmative steps in the recruitment of Negro applicants for employment at all levels that would eliminate the continued effects of prior overt racial discrimination and prior reservation of the more desirable jobs to white employees.

The "contracted commitment to non-discrimination" by the companies is a provision in each of their contracts required to be a part thereof by Executive Order 11246, as amended. 30 F.R. 12319, 32 F.R. 14303, 34 F.R. 12985.[2]

---

1. As filed the complaint named 116 plaintiffs and 12 companies. Thereafter, the complaint was amended by omitting reference to one company and dropping one named plaintiff who had alleged he had been denied employment by that company. This resulted from a stipulation of settlement entered into by the plaintiffs and that company—Olinkraft, Inc.

2. There have been a series of Presidential orders commencing in 1941, designed to prevent discrimination because of race, color, etc., by government contractors. See Farmer v. Philadelphia Electric Co., 329 F.2d 3, 5–7 (C.A. 3, 1964), for a summary of the history of those orders.

There it is provided, among other things, that government contracts shall set forth the following:

The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

The plaintiffs do not, nor could they, complain that the Secretary of Defense and the Administrator of General Services Administration have entered into and are about to enter into contracts that discriminate against them because of their color. The quoted provision is designed to bring about a contrary result. The gist of plaintiffs' demand is that those officers be compelled to abrogate existing contracts with the companies named and be prohibited from entering into further contracts with those companies, even though such contracts do and would expressly prohibit discriminatory employment practices by the companies.

The defendants Secretary and Administrator assert that this action, with the relief sought, is a suit against the United States which has not consented to be sued and for that reason it must be dismissed. The defendants point out that the contracts are not entered into in the names of those officers but rather are between the United States and the paper and pulp companies. No charge is made that in entering into the contracts in the name of the United States the defendants acted in excess of any statutory power. Rather the wrongs charged against the defendants are that they have failed to enforce against the companies their contractual commitments not to discriminate, which failure, so the plaintiffs assert, violates their Fifth Amendment rights. In short, what the plaintiffs ask of this Court is that it exercise judicial power over the administration of valid government contracts.

Defendants assert that Larson v. Domestic and Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) controls this action and calls for its dismissal. In *Larson* the plaintiff complained that the War Assets Administrator sold coal to it but the Administrator refused delivery and instead entered into another contract to sell the coal to other parties. Plaintiff sought to enjoin the Administrator from selling or delivering the coal to anyone other than it. Plaintiff also requested a declaratory judgment as to its rights under its contract for the coal. The doctrine of sovereign immunity barred the action was the ruling of the Supreme Court. It pointed out that the relief sought was in fact against the United States and not against the officer acting in his individual capacity and since the sovereign had not consented to be sued the court had no jurisdiction. In so ruling the Supreme Court stated (337 U.S. at 688, 689, 69 S.Ct. at 1460):

The question becomes difficult and the area of controversy is entered when the suit is not one for damages but for specific relief: i. e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. In each such case the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when an agent's actions

are restrained, the sovereign itself may, through him, be restrained. * * * the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction.

The relief sought in this case was not the payment of damages by the individual defendant. To the contrary, it was asked that the court order the War Assets Administrator, his agents, assistants, deputies and employees and all persons acting under their direction, not to sell the coal involved and not to deliver it to anyone other than the respondent. The district court held that this was relief against the sovereign and therefore dismissed the suit. We agree.

See also Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962), Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

Plaintiffs in response to defendants' motion cite several cases which they contend demonstrate that the sovereign immunity doctrine is not applicable here. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912), United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882), Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969), Scanwell Laboratories Inc. v. Shaffer, D.C.Cir., 424 F.2d 859 (February 13, 1970, Appeals No. 22,863). An examination of those cases shows them to be inapposite.[3] There the officials were acting or allegedly acting in excess of lawful authority or without authority. But such is not the case here. The Secretary of Defense and the Administrator of General Services Administration did not contract with the pulp and paper companies either without authority or beyond the scope of their statutory authority. Nor did they act in disregard of Executive Order 11246. They incorporated in those contracts the very nondiscriminatory clause the Presidential order directed them to make an express part of the contracts.

■ Plaintiffs do not complain of what defendants have done but rather of what they have not done, that is their failure to abrogate existing government contracts and to refuse to enter into further government contracts with the pulp and paper companies. But for this Court to compel such action by defendants would "be compulsion against the sovereign although nominally directed against the individual officer[s]." Thus this action is, "in substance, a suit against the Government over which the Court, in the absence of consent, has no jurisdiction." Larson v. Domestic and Foreign Corp., 337 U.S. at 688, 69 S.Ct. at 1460.

■ No showing has been made that the United States has consented to this suit. This Court knows of no such consent. Plaintiffs have cited a July 16, 1969, Memorandum of the Solicitor of the Department of Labor which, among other things, states "[T]he failure of the Federal Government to require a Government contractor to remedy the present

---

3. The Supreme Court cases cited by plaintiffs were all prior to Larson v. Domestic and Foreign Corp. and thus pertinent here is the statement in Malone v. Bowdoin, 369 U.S. at 646, 82 S.Ct. at 982:

While it is possible to differentiate many of these cases upon their individualized facts, it is fair to say that to reconcile completely all the decisions of the Court in this field prior to 1949 would be a Procrustean task.

The Court's 1949 Larson decision makes it unnessary, however, to undertake that task here. For in Larson the Court, aware that it was called upon to "resolve the conflict in doctrine" (337 U.S., at 701, 69 S.Ct., at 1467), thoroughly reviewed the many prior decisions, and made an informed and carefully considered choice between the seemingly conflicting precedents.

effects of past discriminatory practices would render the Government vulnerable to a suit that it had breached its Fifth Amendment obligations." But the Solicitor is not authorized to waive sovereign immunity and his statement is nothing more than one lawyer's views "without legal significance." Minnesota v. United States, 305 U.S. 382, 388–389, 59 S.Ct. 292, 83 L.Ed. 235.

Plaintiffs assert that two cases cited by the Solicitor of the Department of Labor "are particularly on point." They are Ethridge v. Rhodes, 268 F.Supp. 83 (S.D.Ohio, E.D.1967) and Todd v. Joint Apprenticeships Com. of Steel Wkrs. of Chicago, 223 F.Supp. 12 (N.D.Ill., E.D. 1963), vacated as moot, 332 F.2d 243 (7 Cir. 1963), cert. denied, 380 U.S. 914, 85 S.Ct. 880, 13 L.Ed.2d 800 (1965). But neither case lives up to plaintiffs' claim.

In Ethridge v. Rhodes the defendants are three officers of the State of Ohio not of the Federal Government. Thus, the sovereignty of the United States was not involved. As for the *Todd* case while the court refused to dismiss the regional officials of the General Services Administration and Department of Labor it did not grant the relief requested against them and in fact it stated that it did not intend "to enjoin the United States of America." Insofar as the *Todd* case rejected the sovereign immunity defense I find it unpersuasive.

The relief sought by the plaintiffs here would require action by these defendants which would affect the public administration of government agencies. Such relief would be against the United States as to which the United States has not consented to be sued. Sovereign immunity precludes this Court from granting such relief. Congress of Racial Equal. v. Commissioner, Social Security Admin., 270 F.Supp. 537, 541 (D.Md. 1967).

■ But even if the sovereign immunity doctrine did not dispose of this action, it would be dismissed because of plaintiffs' failure to pursue the administrative remedies afforded them. Both the executive and legislative departments of the Federal Government have taken action over the years to eliminate discrimination in employment because of race, creed, color or national origin. Both of those branches of government have provided procedures for affected parties to obtain relief from such discrimination.

Since 1941 five Presidents of the United States have issued Executive Orders directed at eliminating discrimination in employment by Government contractors.[4] The current and superseding order is Executive Order 11246 of September 24, 1965, as amended. 30 F.R. 12319, 32 F.R. 14303, 34 F.R. 12986.

Executive Order 11246 sets forth the specific nondiscriminatory provisions to be included in every government contract. Under those provisions the contractor is bound not to discriminate against any employee or applicant for employment because of race, color, creed or national origin. The contractor is required to take affirmative action to ensure that applicants are employed, and employees are treated during employment, without discrimination. Such affirmative action includes employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor must include in every subcontract or purchase order the same nondiscriminatory provisions as are set forth in its prime contract with the Government. For breach of any of the nondiscriminatory provisions of its contract, a contractor may, among other things, have its contract cancelled, terminated or suspended in whole or in part as well as be declared ineligible for further government contracts.

---

4. Farmer v. Philadelphia Electric Company, 329 F.2d 3, 5–7 (3 Cir. 1964) summarizes the provisions of those orders to and including Executive Order 10925 (March 6, 1961).

While each contracting agency of the Government is primarily responsible for obtaining compliance with the rules, regulations and orders respecting its contracts, Executive Order 11246 makes the Secretary of Labor responsible for the administration of the Order pertaining to government contracts and authorizes him to adopt the necessary rules and regulations and issue the necessary orders.

Among the sanctions and penalties provided by Executive Order 11246 are those that authorize the Secretary of Labor or the Government contracting agency to recommend to the Department of Justice that there be instituted appropriate civil and criminal proceedings, including actions under Title VII of the Civil Rights Act of 1964.

Pursuant to the authority vested in him by Executive Order 11246, the Secretary of Labor adopted and promulgated detailed regulations to achieve the aims of equal employment opportunities for employees of and applicants for employment with Government contractors. With certain exceptions the Secretary of Labor delegated authority and assigned responsibility to the Director, Office of Federal Contract Compliance, Department of Labor. The regulations, currently effective, are set forth at length at 41 Code of Federal Regulations, Chapter 60.

Pertinent to plaintiffs' claims asserted here are those provisions of the regulations that establish a procedure for complaining of discriminatory practices by a Government contractor. Any employee of or applicant for employment with any such contractor may file in writing a complaint of alleged discrimination in violation of the equal opportunity clause. The complaint is to be filed either by the employee or applicant or by an authorized representative within 180 days of the alleged discrimination unless the time is extended by the contracting agency or Director upon good cause shown. The complaint is to be filed with the agency or the Director and is to include, among other things, the names of the complainant and contractor and a description of the alleged discriminatory acts. If the information in the complaint is not complete, the agency or Director is required to promptly seek the needed information. 41 C.F.R. §§ 60–1.21—60–1.23.

Upon the filing of a complaint the regulations require a prompt investigation and the development of a complete case record of the charges made by the employee or applicant for employment. This is done by the contracting agency or a compliance agency designated by the Director. If the investigation discloses no violation of the equal opportunity clause of the contract, the investigating agency reports such findings to the Director who may review those findings and thereafter request further investigation or he may undertake any investigation as he may deem appropriate. If the complaint investigation indicates a violation of the equal opportunity clause, the matter is to be resolved by informal means wherever possible. If the indicated violation cannot be resolved by informal means, the contractor is afforded an opportunity for a hearing. Where the hearing results in a final decision that the equal opportunity clause was violated, the Director, or the contracting agency with the approval of the Director, may cause the contract to be cancelled, terminated or suspended, debar a contractor from further contracts or subcontracts, or may impose such other sanctions as are authorized by Executive Order 11246. 41 C.F.R. §§ 60–1.24, 60–1.26, 60–1.27.

Thus, the ultimate relief plaintiffs seek by this action, contract cancellation and debarment, is available to them in proper cases under the provisions of Executive Order 11246 and the Secretary's implementing regulations.

Nowhere do plaintiffs assert that anyone of them has availed himself of the procedure provided in the implementa-

tion of Executive Order 11246.[5] Rather the plaintiffs assert that for several reasons the doctrine of exhaustion of administrative remedies is not applicable.

1. Plaintiffs contend that the Supreme Court in recent decisions has established that the exhaustion doctrine is inapplicable when redress is sought in Federal courts for violations of constitutional rights by government officials. But, as the intervenor-defendants point out, the cases plaintiffs rely on involve state or other nonfederal officials and were brought against such officials under the Civil Rights Act. In McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the Court held that relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provides a remedy since the federal remedy is supplementary to the state remedy. The latter remedy the Supreme Court has said in Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), "need not be first sought and refused before the federal one is invoked." And in Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), the Court made clear that the state remedy included administrative remedies.

But the instant action is not one brought under the Civil Rights Act against state officials. Defendants here are Federal officers. The administrative remedies under consideration here are Federal remedies which if invoked in a proper case would give the plaintiffs, or such of them as could show they were aggrieved, the relief they seek in this action. Those remedies were designed for that very purpose.

2. Plaintiffs contend that individual complainants are not entitled to trigger and participate in administrative proceedings under Executive Order 11246. While the Order itself is silent as to the procedure for making a complaint by an individual employee or applicant for employment, the regulations, as has been noted, are not. Provision has been made for an individual to file a complaint and if his charge demonstrates a violation of the equal opportunity clause which cannot be resolved informally, he may participate in the Administrative hearing upon a showing that he has an interest in the proceedings and may contribute materially to the proper disposition thereof. 41 C.F.R. § 60–1.26(b).

Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), cited by plaintiffs, is inapposite. There the Department of Health, Education and Welfare had "no procedures whereby welfare recipients may trigger and participate in the Department's review of state welfare programs." (397 U.S. at 406, 90 S.Ct. at 1215.) Such is not the case here.

3. Plaintiffs assert that administrative processes have been exhausted as to four of the companies which employ some of the plaintiffs and that an administrative decision on the same issues with respect to the other eight employing companies would be idle.

As is made known by the Wilks and Jarrett affidavits attached to defendants' motion to dismiss, compliance investigations have been made and negotia-

---

5. Attached to defendants' motion are two affidavits. One is by John Wilks, Director of the Office of Federal Contract Compliance and the other is the affidavit of Albert R. Jarrett. In each affidavit the statement is made that complaints have been filed but in neither affidavit is it stated that any plaintiff filed a complaint. Defendants' statement pursuant to Local Rule 9(H) states that some of the plaintiffs have filed complaints or otherwise instituted proceedings with the Office of Federal Contract Compliance,

Department of Labor, pursuant to 41 C.F.R. 60–1.21–60–1.24 and in some instances such proceedings have not been concluded or terminated. The statement does not identify the particular plaintiffs nor when the complaints were filed or other proceedings instituted. Affidavits filed by the intervenor-defendants state that they are not aware of any complaints filed by any employee or applicant for employment of either American Can Company or Scott Paper Company.

tions and agreements have been entered into with four paper and pulp companies. Those companies are International Paper Company, American Can Company, Kimberly Clark Corporation and Scott Paper Company.[6] But plaintiffs assert that the compliance agreements entered into by International Paper Company, American Can Company, and Scott Paper Company have not eliminated the discriminatory practices about which they complain. Assuming that such practices continue notwithstanding the agreements to eliminate them, the administrative procedures provided by Executive Order 11246 and the Secretary's regulations provide means for the adversely affected plaintiff or plaintiffs to bring such violations to the attention of the Government. If the charges after hearing are substantiated the Government agencies involved have the means of remedying the conditions, even to the extent of cancelling the contracts and declaring the offending companies ineligible for further Government contracts.

As to the remaining eight paper and pulp companies, about which plaintiffs state it would be futile to proceed administratively, it is to be noted that the affidavits of Wilks and Jarrett state that compliance investigations and discussions are presently being conducted with respect to five of those companies. They are Container Corporation, Allied Paper, Inc., St. Regis Paper Company, Union Camp Corporation and West Virginia Pulp and Paper Company. Whether the results of the current investigations will be to plaintiffs' satisfaction remains to be seen. But if any affected plaintiff should not be satisfied he can utilize the available administrative procedure.

So far as appears from the Wilks and Jarrett affidavits compliance investigations have not been and are not now being made of the remaining companies about which plaintiffs complain. As to those companies complaints may be filed by the affected employees in the manner provided by the Secretary's regulations.

4. Finally plaintiffs argue that administrative inaction and delay in enforcement of the requirements of Executive Order 11246 relieves them of the necessity of exhausting the administrative remedies available to them. The essence of plaintiffs' assertion is that the Government agencies have not acted with the swiftness plaintiffs desire. It ill becomes these plaintiffs to be critical of the Government in not acting to eliminate the violations which they claim have directly and adversely affected them when they have done nothing to bring such charges to the attention of the agencies. Their complaints, filed as provided by the Secretary's regulations, would focus on the particular violations which would be charged. Until at least some effort is made by the plaintiffs to invoke their available administrative remedies, it can hardly be said that they are exhausted instead of the remedies.

And Executive Order 11246 is not the only remedy available to plaintiffs. The Congress in 1964 enacted a Civil Rights Act, 42 U.S.C. § 2000e et seq. Title VII of that Act has for its purpose the protection of equal employment opportunities. It declares that it shall be an unlawful employment practice for an employer "to fail or refuse to hire or to discharge * * * or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, * * or to limit, segregate, or classify his

---

6. While plaintiffs' memorandum in opposition names Container Corporation as having been found by the Government in compliance with Executive Order 11246, it appears from the Wilks' affidavit that General Services Administration has been engaging in discussions to bring that company into compliance. While Kimberly Clark Corporation does not seem to be a company about which plaintiffs complain, the Wilks' affidavit shows that it has entered into a compliance agreement with the Government.

employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a).

By Title VII an Equal Employment Opportunity Commission was created. 42 U.S.C. § 2000e–4. With that Commission an aggrieved employee or applicant for employment may file a complaint, with the assistance of the Commission if necessary. Where the complaint charges that an employer has engaged in an unlawful employment practice, the employer will be furnished with a copy of the complaint and the Commission will investigate such charges. If as a result of such investigation it is concluded that there is reasonable cause to believe that the charge is true, the Commission is to endeavor to eliminate the unlawful employment practice by informal methods of conference, conciliation and persuasion. If within the thirty days prescribed by the Act (which may be extended by the Commission to not more than sixty days)[7] the Commission is unable to obtain voluntary compliance, it is to so notify the aggrieved employee or applicant for employment. Within thirty days thereafter an action may be instituted by such aggrieved person against the employer in a United States District Court. If the court finds that the employer has intentionally engaged in or is intentionally engaging in the unlawful employment practice charged in the complaint, it may enjoin the defendant from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of em-

ployees, with or without back pay. 42 U.S.C. § 2000e–5.

Pursuant to the authority conferred by the Act, the Commission has issued detailed procedural regulations to carry out the provisions of Title VII. 29 C.F.R. Ch. XIV, Part 1601.

Two of the named plaintiffs have heretofore filed complaints with the Commission. They are Ezekiel Harrison and Edward C. English. Those complaints are still pending and have been for more than sixty days.[8] Both Harrison and English at any time may demand and obtain notices from the Commission of the latter's inability to obtain voluntary compliance. 29 C.F.R. § 1601.25a. Armed with such notices Harrison and English may institute civil actions against their respective employers.

Any of the named plaintiffs, or any other employee or applicant for employment of the paper and pulp companies, is provided with a procedure under Title VII of the Civil Rights Act of 1964 to file charges of unlawful employment practices with the Commission and with the courts where voluntary compliance cannot be obtained by the Commission. And Title VII actions may be class actions under Rule 23, Fed.R.Civ.P., without all of the plaintiffs being required to first file complaints with the Commission. Oatis v. Crown Zellerbach Corporation, 398 F.2d 496, 499 (5 Cir. 1968), Miller v. International Paper Company, 408 F.2d 283, 284–285 (5 Cir. 1969). Thus Harrison and English can file class actions and, if the charges they make can be supported, obtain full relief from the claimed unlawful employment practices.[9] If the other named plaintiffs pursued the remedies provided by the Civil Rights Act and implementing regulations, they

---

7. The Commission has extended the period to sixty days. 29 C.F.R. § 1601.25a(a).

8. Harrison's complaint was filed in 1968 while English's complaint was filed in February 1970. The latter was originally filed in November 1969, but was not sworn to, as required by the regulations, until February 25, 1970.

9. Harrison charges in this action that American Can Company refused him employment because of his color. His class action would be against that company. English is an employee of Scott Paper Company. His class action would be against that company for its alleged illegal employment conduct.

also could file class actions and, therefore, all of the complained of paper and pulp companies could be sued directly in class action.[10] Where the charges were proven in such actions complete relief could be granted the class plaintiffs.

But plaintiffs are not content to utilize the readily available Title VII remedy. Rather they complain that it would place an intolerable burden on them and their present counsel to conduct separate actions against the complained of eleven paper and pulp companies and their sixteen plants.

With respect to the matter of counsel it is to be noted that Title VII of the Civil Rights Act of 1964 provides that District Courts may appoint counsel for plaintiffs and may authorize the commencement of actions without the payment of fees, costs, or security. 42 U.S.C. § 2000e-5(e). And in actions in which plaintiffs prevail, the court or courts, in its or their discretion, may allow them attorneys' fees as a part of the costs, with the Commission and the United States being liable for costs the same as a private person. 42 U.S.C. § 2000e-5(k). Thus, if plaintiffs' present counsel found it impossible to conduct the several actions against the paper and pulp companies other counsel could be appointed and their fees paid as costs providing the plaintiffs prevailed.

As to the burden the plaintiffs claim would be placed on them by the dismissal of this action, it is to be noted again that not one has asserted he filed a complaint under the procedure established to accomplish the purposes of Executive Order 11246 and only two have filed complaints with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964. Their inaction in this respect does not result from any oversight. They have made very clear in their memorandum in opposition to the motions to dismiss, as has their counsel in oral argument, that they have no interest in pursuing the remedies provided them by the executive and legislative branches of the Government. Rather it is their expressed desire that this Court so construe the due process clause of the Fifth Amendment as requiring the Secretary of Defense and the Administrator of General Services Administration to cancel existing contracts with the paper and pulp companies and to refrain from awarding those companies further contracts. That this Court will not do.

As has been said "there is great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation." Oatis v. Crown Zellerbach Corporation, 398 F.2d 496, 498 (5 Cir. 1968). It was for that reason the Commission was created and its conciliatory functions defined. Only when voluntary compliance cannot be obtained, or a reasonable period of time has elapsed for obtaining such compliance, may the aggrieved person bring suit. Such was the clear intent of Congress in enacting Title VII. Not to dismiss this action would require this Court to disregard that intent. Even to avoid a multiplicity of suits by plaintiffs furnishes no justification for this Court to entertain this action. Particularly is this true when to do so would require it to involve itself with a dubious Constitutional issue. Traditionally courts avoid Constitutional issues, especially when other adequate remedies as here

10. These other plaintiffs would have to file timely charges with the Equal Employment Opportunity Commission. If after investigation the Commission determined that there was reasonable cause to believe that the employment practices charged were unlawful it would endeavor to eliminate such practices by informal methods of conference, conciliation and persuasion. If the Commission failed to obtain voluntary compliance it would notify the charging plaintiffs of that fact and they could thirty days thereafter institute their actions. And, if after sixty days from the filing of their charges the plaintiffs had received no notices from the Commission, they could demand such notices which would be promptly furnished them and thirty days thereafter they could bring suit. 29 C.F.R. §§ 1601.6, 1601.19, 1601.25, 1601.25a, 42 U.S.C. § 2000e-5(e).

are available. Aircraft and Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).

For the reasons stated herein defendants' and intervenor-defendants' motions to dismiss are granted.