430 F.2d 1130
 UNITED STATES of America, Appellee,
v.
87.30 ACRES OF LAND, MORE OR LESS, Situate IN WHITMAN AND
GARFIELD COUNTIES, STATE OF WASHINGTON, Pomeroy Grain
Growers, Inc., a Washington Corporation, et al. (Ed and Mary
Stueckle, Tracts 418 and 429), Appellants.
 No. 23272.
 United States Court of Appeals, Ninth Circuit.
 Aug. 6, 1970, Rehearing Denied Sept. 17, 1970.
 
 William C. Harrison (argued), Spokane, Wash., for appellants.
 Jacques B. Gelin (argued), Raymond Zagone, Atty., Shiro Kashiwa, Atty. Gen. Lands & Natural Resources, Dept. of Justice, Washington, D.C., Dean C. Smith, U.S. Atty., Glen E. Taylor, Asst. Atty. Gen., Robt. M. Sweeney, Asst. U.S. Atty., Spokane, Wash., for appellee.
 Before HAMLIN, HAMLEY and KILKENNY, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 
 1
 This is a condemnation proceeding by the United States to acquire land in the state of Washington, located on the Snake River, for use in connection with the Little Goose Lock & Dam Project, a part of a comprehensive plan for the development of the Snake and Columbia Rivers.[1] Appellants, Mr. & Mrs. Edward Stueckle, were the owners of 2.37 acres of the condemned property. The jury awarded appellants $28,050.00 for which sum judgment was entered. They appeal. We affirm.
 
 
 2
 Located upon the condemned property was a grain storage elevator having a capacity of approximately 30,000 bushels. The elevator was served by a spur track leading to the right-of-way of the Camas Prairie Railroad, which, after relocation, would no longer join the land of appellants. In addition to the condemned property, appellants owned a non-contiguous farm located some two to four miles from the elevator. The grain produced on this land and on a substantial acreage owned by appellants' two sons was stored in and shipped from the storage facility. No part of either farm was included in the taking. Prior to the taking, the appellants, and members of the Corps of Army Engineers, seriously discussed the feasibility of relocating the elevator and loading facilities.
 
 CONTENTIONS
 
 3
 In general, the appellants contend that the district court erred in the following particulars: (1) excluding evidence relating to negotiations on the elevator relocation and the expense of the proposed relocation; (2) excluding evidence that the highest and best use of the land was that of a port or barge shipping site on the Snake River; and (3) excluding evidence of damage to lands owned by appellants' sons.
 
 
 4
 ( 1) Appellants cite no specific authority for their claim that they should be allowed as damages a sum equal to the cost of relocating their elevator. The claim is based primarily on the previous negotiations with officials of the Corps of Engineers. Neither the constitution nor the statutes define the meaning of just compensation. Except in rare cases, just compensation is fixed as the value of the interest taken or, in other words, 'Market Value.' Since market value does not fluctuate with the requirements or equities of the condemnor or condemnee, but is governed by what is the general demand for the property on the open market, evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are not to be considered. Mitchell v. United States, 267 U.S. 341, 344-345, 45 S.Ct. 293, 69 L.Ed. 644 (1925).
 
 
 5
 If appellants are claiming the negotiations as a basis for an estoppel, rather than as a basis for a measure of damage, they are then faced with Rule 71A(e), F.R.Civ.P., which limits a defendant in a condemnation case to: 'any objection or defense to the taking of his property' and further provides that 'No other pleading or motion asserting any additional defense or objection shall be allowed.'
 
 
 6
 At best, appellants' claim, on this theory, would be one based on breach of an implied or express contract. This would constitute a counterclaim against the United States and, consequently, impermissible without a consent. Such a claim could be prosecuted only under the Tucker Act.[2] United States v. Gila River Pima-Maricopa Indian Community, 391 F.2d 53, 55-56 (9th Cir. 1968).
 
 
 7
 Cases such as Mills v. United States, 363 F.2d 78 (8th Cir. 1966); United States v. Bell, 363 F.2d 94 (8th Cir. 1966), and others, cited by appellants, do not even remotely suggest that the expense of relocation of the business is a proper measure of damage. We must keep in mind that by the institution of the condemnation action, the United States consented only to the award of just compensation, not to an allowance for specific relief, such as damages for the expense of relocation. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962).
 
 
 8
 On the same general theory, the appellants propose that the court should have permitted the introduction of evidence on special value to them, rather than evidence of market value. The proposal is groundless. United States v. Miller, 317 U.S. 369, 375, 63 S.Ct. 276, 87 L.Ed. 336 (1943); Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).
 
 
 9
 ( 2) The fact that the appellants had a revocable permit issued to them for the purpose of making improvements on the Snake River does not permit them to employ the estoppel doctrine taught by Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893). The breadth of Monongahela is expressly limited by United States v. Rands, 389 U.S. 121, 88 S.Ct. 265, 19 L.Ed.2d 329 (1967) to those instances where a facility is constructed on navigable waters 'at the instance and implied invitation of Congress' and to a case 'primarily resting upon the doctrine of estoppel * * *.' The Rands decision, involving alleged port site value on the Columbia River, in our opinion, is a complete answer to all of appellants' contentions on this issue. Their permit was expressly revocable by the Army Engineers. In Rands, the landowners had a right to apply for such a permit and this right can be equated to such rights as appellants may have had under their revocable permit. We do not mean to say that revocable permits may not, under certain circumstances, have value. Such rights were recognized in United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945). Appellants' permit, however, does not reach that plateau. It is more to be collated with the termination clause in United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 (1946) and the revocable permits before the court in Acton v. United States, 401 F.2d 896 (9th Cir. 1968), cert. denied 393 U.S. 1121, 89 S.Ct. 1003, 22 L.Ed.2d 128. This type of permit is not such a vested property right as, on termination, requires payment of just compensation under the Fifth Amendment. Acton v. United States, supra, p. 899. Nor does the fact that appellants may have actually used the area as a port site distinguish this case from Rands. Offers of proof of port site value were properly rejected.
 
 
 10
 ( 3) Next appellants claim severance damages in connection with the non-contiguous crop lands owned by their sons. They urge that these crop lands and the elevator constituted a unitary plant, the crop lands providing some of the grain which supported the elevator. Admittedly, appellants have no legal estate in their sons' land. Nor do the sons have an estate in the condemned property. Thus, unity of ownership is completely absent. On this issue, United States v. Honolulu Plantation Co., 182 F.2d 172 (9th Cir. 1950), is controlling. There, the United States condemned certain sugar cane producing lands from which a sugar refinery received the cane. The cane lands were owned in fee by third parties. However, the cane producing lands were controlled by the refinery under a long term lease. The lease provisions reserved to the refinery the right to pursue a claim for damages, on condemnation, to the remaining lands and to the business of the refinery. In passing on the damage issue, the court recognized the well established general rule that severance damages would be allowed only where there was but a single parcel owned in fee simple by one party. It also mentioned an expansion of that doctrine which permits the inclusion of another parcel in the same ownership if it is contiguous to the principal tract. The court then focused its attention on still another enlargement of the field and in doing so used the following language:
 
 
 11
 'With some reluctance, the courts have held that the owner of one parcel in fee may be compensated for loss in market value thereof as a result of the taking of another parcel owned in fee by him, even if the latter is not contiguous, provided that, by actual and permanent use, a unitary purpose is served by both parcels. But strict proof of the loss in market value to the remaining parcel is obligatory. Where part of a tract in fee ownership is condemned, the loss in market value of the remainder cannot be augmented by consideration of the damage caused thereto by the taking or prospective use of lands held by third parties in fee simple as part of the same project. Nor can the fact that an enterprise upon one parcel depends upon other lands in fee ownership of third parties for supply of an essential material be used to connect the two for purposes of compensation. It is the estates in the separate parcels which must be connected.' (182 F.2d pp. 178-179). The significant statements in the quotation are supported by Campbell v. United States, 266 U.S. 368, 372, 45 S.Ct. 115, 69 L.Ed. 328 (1924); Mitchell v. United States, supra.
 
 
 12
 The offer of evidence on this subject was properly rejected.
 
 
 13
 Finally, we find no error in any of the other pre-trial orders. Nor do we find error in the court's evidentiary rulings during the course of the trial. Appellants' challenges to the court's instructions are answered adversely to their contentions in our discussions of the law of eminent domain under Points (1), (2) and (3). It follows that their motions for a directed verdict and for an order setting aside the verdict or, in the alternative, for a new trial were properly denied. We find no authority for the allowance to appellants of costs in the lower court.
 
 
 14
 The 507 page transcript makes it abundantly clear the appellants had an even-handed, just and impartial trial. The judge properly submitted to the jury, under appropriate instructions, appellants' claim of severance damage in connection with their own crop lands. The issue of fact on that claim was evidently resolved against them. It is not our function to inquire into the logic behind a jury verdict.
 
 
 15
 Finding no error, we affirm.
 
 
 
 [1]
 59 Stat. 10
 
 
 [2]
 28 U.S.C. 1346(a)(2)